MARTHA HALL *v.* STRYKER, Sheriff, &c.

One sued for seizing goods under an attachment may defend by proving that a prior sale by the defendant in the attachment to the claimant was made in fraud of creditors.

In the affidavit to procure the attachment, it is a sufficient statement of the applicant's title that he is the owner of the demand against the debtor, "under assignment to F. H.," an assignee of the original creditor.

Whether the plaintiff in the action for seizing the goods is at liberty to controvert the indebtedness of the defendant in the attachment suit to the plaintiff therein, *quære.*

*It seems* that, as against third persons, the affidavits on which the attachment issued, if sufficient to give jurisdiction to the officer granting it, establish the character of the plaintiff therein as a creditor, and that it lies upon a claimant of the goods to establish the validity of the transfer to himself.

APPEAL from the Supreme Court. The action, which was commenced December 31, 1857, was in the nature of trespass *de bonis asportatis,* for a quantity of household furniture, two wagons, &c. The defendant justified the taking, as sheriff of Kings county, under an attachment issued by a justice of the Supreme Court, according to the provisions of section 227 and the succeeding sections of the Code of Procedure, in an action brought by DeWitt & Hay against Robert Hall, the brother of the plaintiff, who was alleged to be the owner of the goods.

On the trial, the plaintiff proved the taking of the property by a deputy of the defendant, on the 1st day of December, 1857, at 10 o'clock in the morning, at R. Hall's house in Flatbush; and she produced a bill of sale to her, purporting to have been executed by Hall, dated the —— day of November, 1857, and proved, by him, that it was executed on the 30th of that month. He also testified that its consideration was $1,000, which he owed her for money lent. The bill of sale embraced other property besides that which was taken by the deputy, and was expressed to be in consideration of one dollar.

The defendant gave in evidence the attachment issued under the hand of a justice of the Supreme Court, dated the 30th November, 1857, and proved its delivery to the sheriff at 4 o'clock on that day. It recited an application made to the justice by DeWitt C. Hay, the plaintiff, for an attachment against Robert Hall, defendant; that it appeared, by affidavit, that a cause of action existed in said action in favor of the plaintiff against the defendant, for the recovery of $3,500 and interest, which affidavit, it was stated, specified the amount of said claim and the grounds thereof, and showed that the said Robert Hall had disposed of, or was about to dispose of his property, with intent to defraud his creditors; and it also recited that the plaintiff had given the undertaking required by law. It thereupon commanded the sheriff to attach the defendant's property, or so much thereof, &c., and to proceed according to law. The defendant also, pursuant to the ruling of the judge, holding it to be necessary, produced the affidavits on which the attachment was issued. The only point made upon them related to the transfer of the demand to the plaintiff, it being shown to have been originally a demand existing against Hall in favor of one Angus Cameron. The statement on that subject in the plaintiff's affidavit was, "that deponent is now the owner and holder of said demand, under assignment to Frank Hay, to whom said Cameron had transferred it by assignment, bearing date said 1st May, 1857." There was also an affidavit of Frank Hay, relating an interview had by him with the defendant Hall, at a time when the defendant had called upon him in relation to the demand of Cameron, "which (the affidavit states) was then owned by deponent under an assignment dated said May 1, 1857." The plaintiff's counsel objected that the affidavits did not show the plaintiff, D. C. Hay, to be the owner of the demand. The judge allowed the exception, and excluded the affidavits; upon which the defendant, after excepting to the ruling, offered in evidence an order of the Supreme Court at special term, on a motion made by the defendant Hall, in the action in which the attachment was issued, to set it aside. It was to the effect that upon

Hall *v.* Stryker.

reading and filing affidavits, and hearing counsel for both parties, it was ordered "that on plaintiff filing an affidavit, by way of amendment to the affidavit on which the attachment was granted, showing that the plaintiff was owner by assignment of the demand sued on, and paying the defendant seven dollars costs of the motion, said motion be denied." In connection with this order, the defendant in the present action offered to produce the affidavits used on the motion; and to show a compliance with its terms by filing the affidavit and paying the costs; and he also offered to make proof of the debt of Cameron against Hall, and of the two assignments by which it was transferred to Hay, the plaintiff in the suit commenced by attachment. The judge excluded the evidence, on an objection by the plaintiff's counsel, and the defendant excepted. The defendant gave further evidence touching the *bona fides* of the bill of sale; and he offered evidence tending to show that it was not actually executed until after the attachment was delivered to the sheriff to be executed, which was excluded by the judge, on the plaintiff's objection, on the ground that the attachment bound the goods only from the time of their actual seizure, and the defendant's counsel excepted. The Case closed by a statement that "the cause was submitted to the jury, the court instructing them that as the right of the creditors had, by the rulings during the trial, been excluded from the case, the only questions in issue were the taking of the property, the title of the plaintiff to it, and its value; that there was no reason to doubt the delivery of the bill of sale as Hall had testified to it, and the possession of the plaintiff under it. To so much of the charge as related to the value of the property, the defendant's counsel then and there excepted, claiming that the measure of the damages was only the loss by reason of the deprivation of the use of the property." The verdict was for the plaintiff for $1,178.96; and it was ordered that the exceptions should be first heard at a general term, and that judgment should be there rendered.

The court at general term ordered judgment for the plaintiff with costs, and the defendant appealed.

*S. P. Nash,* for the appellant.

*James L. Campbell,* for the defendant.

DENIO, Ch. J.  The only question discussed in the opinion of the general term, upon rendering the judgment of the Supreme Court, which is appealed from, was, whether, upon the assumption that the attachment was regular and operative against Hall, the sheriff could justify the seizure of property which Hall had conveyed to the plaintiff before such seizure, upon showing that the conveyance was fraudulent against the creditors of Hall.  Having come to the conclusion that property fraudulently conveyed could not be taken under such process, it was unnecessary for that court to consider the questions which arose upon the validity of the attachment. Having arrived at a different opinion upon the point on which the case was there determined, we are obliged to pass upon some of the other exceptions.

Waiving any discussion of the effect of that process, if it should be found to have been issued upon insufficient grounds, we come directly to the consideration of the alleged defect in the affidavits which were laid before the justice.  It was sufficiently proved by them that an indebtedness had existed in favor of Cameron against Hall, and the point of the objection was, that it was not shown that the cause of action upon such indebtedness had been transferred, so as to become vested in Dewitt C. Hay, who sued out the attachment.  It is suggested, with some probability, that a clerical mistake had occurred, by which the word "to" after the word "assignment" had been changed from the word "from."  If the sentence had been written in the way which the supposition assumed to have been intended, the transfer would have been more precisely and circumstantially set forth; but we must read it as it actually appears in the paper.  The allegation in the affidavit, as it stands, is positive, that the deponent, when he applied for the attachment, was the owner and holder of the demand which Cameron formerly had against Hall, the character of which is briefly set out in the preceding part of the

affidavit, and it appearing to be a demand arising upon contract, and, therefore, assignable in its nature. The affidavit proceeds with an attempt to state the manner in which the demand became vested in the deponent; and the statement is, that he is such owner and holder under an assignment made by Cameron to Frank Hay, the date of which is given. It is not to be understood as an allegation, that the deponent took his title by means of that assignment alone, but only that he derived it from, or held it under that instrument. It is the same form of expression which is commonly used to indicate the source of title of a person to any specific, real or personal estate. He is said to hold under a deed which is designated, or a person who is named, without a detail of the mesne conveyances. The import of the whole statement is, that "Hall owed Cameron such a sum. Cameron assigned the demand to Frank Hay, and I am now the holder and owner of the demand under that assignment, that is, by title derived from Frank Hay." It would, perhaps, have been more satisfactory if the conveyance by which the title had passed from Frank to the applicant had been stated; but this was a matter submitted to the judicial discretion of the justice, and he held it sufficient. If the affidavits, after setting out a cause of action, had stated only that it had been vested in the plaintiff, who had become the holder and owner of it, I am satisfied that it would have conferred jurisdiction upon the justice to issue the attachment. The statute, by requiring the application for such process to be passed upon by a judicial officer, assumes that a judgment, in its nature judicial, is to be exercised, and unless the affidavits are wholly defective upon some point which is necessary to be established, the process cannot be impeached as void for want of jurisdiction in the magistrate issuing it. (*Van Alstyne* v. *Erwin,* 1 Kern., 331.)

The point upon which the case was decided at the general term is one of considerable importance. Conveyances made with intent to defraud creditors, pass the title as between the parties, and are void only against the creditors of the party making the conveyance. As against them such conveyances

Hall *v.* Stryker.

are utterly void. It is, moreover, a general rule of law that creditors at large cannot challenge such a conveyance. As they cannot, without process against the debtor, interfere with the possession of his goods, if he had made no conveyance of them, so the fact of his having made a conveyance, with intent to defraud them, gives them no greater rights. The transfer being void as to them, the law considers the property *quoad* them, as still the property of their debtor, and if they would seek its application towards the satisfaction of their debts, they must resort to the same legal remedies which would be necessary if it were really the property of the debtor. But when the creditor has procured legal process, such as the law allows a creditor to have against the property of his debtor, he has acquired the standing of a creditor in respect to all the property of his debtor; and that which he has conveyed with the intent forbidden by the law (the conveyance being void), is as much his, in the judgment of the law, and as fully subject to the process, as if the conveyance had not been made. Under certain circumstances, the law has, upon motives of policy, allowed an *ex parte* determination as to the existence of the debt, and permitted process to issue against the debtor's property upon such determination, providing, however, for sufficient security to the debtor, if upon a regular trial the alleged creditor shall fail to establish the existence of the demand. One of the cases in which this summary procedure may be taken is where the debtor has assigned any of his property with intent to defraud his creditors. Suppose he has assigned, as Hall did in this case, the whole of his goods, it cannot be doubted that the creditor would be entitled to the attachment on establishing the fraud. It is one of the cases expressly provided for in the statute. It might be the baldest cover, a mere gift executed by delivery with a declared purpose to cheat his creditors, yet the title would pass as between the parties, and the remedy which the law has provided would be utterly ineffectual if the property could not be seized on the attachment.

The argument principally urged in the opinions of the
SMITH.—VOL. XIII.      76

Supreme Court, and by the plaintiff's counsel, is that there can be no proper adjudication of the fact of indebtedness upon an *ex parte* hearing in the absence of the parties to be affected by the determination. I think this is an objection which, if at all founded, lies against the statute. As regards the debtor, confessedly, the debt is allowed to be established on the *ex parte* hearing, to the extent of authorizing the seizure of his property. As regards the alleged fraudulent assignee, it is objected that he is allowed no standing in court, and cannot be heard or allowed to produce evidence upon the question of the existence of the indebtedness when the issues come on to be tried, and it is urged that thus a question vital to his title is determined conclusively, on a trial to which he is not a party, and in which he cannot regularly intervene. The property which has been assigned to him should not, it is said, be appropriated to the plaintiff's alleged debt, unless the fact of such debt is judicially established; and it cannot be established, so as to affect him in a suit to which he is a stranger. This argument assumes, and I think properly assumes, that in his action against the sheriff, or the party who has promoted the seizure, the attachment, if regularly issued, is conclusive, and that he can only litigate the question of the validity of the transfer to himself. That question is open to him. If his purchase was unaffected by fraud, he need not wait for the determination of the principal case, but may resort to the same remedies which any party is entitled to, whose property is wrongfully taken or converted. In such an action, though he cannot controvert the process upon any ground except the want of jurisdiction in the officer issuing it, the question of the indebtedness of his vendor will necessarily arise, as fraud cannot be predicated of a conveyance made by a party who is free from debt; and in this way the existence of the debt upon which the attachment may be granted will generally be brought in question. But he is not left solely to an action, for he is entitled to a summary inquiry as to the ownership of the property, and if it is found to be his, or in other words, if his itle is found to be free from fraud, he may have it imme-

diately returned to him, with the expenses of the proceedings. (Code, § 233; R. S., 5th ed., vol. 3, p. 80, §§ 10–12.) A case may happen, it is true, where the conveyance was made with intent to defraud the creditors of the party making it, and yet on the trial it may turn out that the plaintiff will fail to recover in the attachment suit; and the provision for security does not extend to the indemnity of a fraudulent purchaser whose goods have been seized. This may have been a *casus cmissus* in the act, or it may be that the legislature did not think it sound policy to indemnify such a purchaser against the temporary inconvenience of having the property withheld from him during the pendency of the suit against the defendant in the attachment. The possibility of such a state of things as I have supposed does not prove to my mind that a creditor, clothed with due process of attachment against his debtor, and thus invested with the legal character of a creditor, may not lawfully cause to be seized property which that debtor had fraudulently conveyed. That he may seize it seems to me to follow from the sentence of nullity which the statute of frauds pronounces against such conveyances, *quoad* the creditors of the party conveying.

The specific objection, that the purchaser has no day in court to controvert the creditor's debt, would apply with the same force where the seizure was under an execution issued on a judgment. In that case the judgment would be conclusive as to the judgment creditor's debt, though there, as in this case, the fraudulent grantee would have no opportunity to try the question of its existence. (*Candee* v. *Lord*, 2 Comst., 269.) This was the unanimous opinion of the judges of this court in the case cited, though the judgment turned upon another point. The opinion of Judge GARDINER and the points presented by the appellant's counsel in that case fully explain the views upon that question which I now entertain.

But the defendant's counsel in the present case offered to prove the existence of the attaching creditor's debt, and the evidence was excluded. I consider such proof unnecessary, but the offer to give it would seem to meet the main difficulty

which has been suggested by the defendant's counsel. In *Damon* v. *Bryant* (2 Pick., 411), the court in Massachusetts considered that the seizure of the goods of a fraudulent purchaser under an execution against his vendor, could not be justified without such proof. This, I think, was contrary to the law as understood in this State, but if sound, it would not aid the plaintiff in his case. The opinion which I entertain was pronounced against in the Supreme Court, in *Clute* v. *Fitch* (25 Barb., 428). The case is, however, too recent to be regarded as a binding authority, and, besides, the court considered that the sale which was there drawn in question, was perfectly *bona fide*, which consideration was sufficient alone to warrant the judgment.

The cases referred to in the Supreme Court, which hold that a sheriff justifying, under a *fieri facias*, the seizure of property which the defendant had conveyed before the levy, must produce the judgment upon which the execution issued, do not appear to me to have a strong bearing upon the present case. (*Parker* v. *Walrod*, 16 Wend., 514, and cases referred to by the chancellor.) A *fi. fa.* issues at the instance of the party, without any actual authority of the court other than the judgment. But an attachment is process actually awarded by the officer signing it. In the former case it seems proper that the judgment should be produced where goods of a third person, who has a formal title from the debtor, are seized. Such third person cannot move to set aside the execution, and it is, therefore, reasonable that the creditor should show the judgment, in order to put himself in a position to contest the sale. But the reason does not hold where the process does not presuppose any judgment upon which it is based, but emanates directly from an officer authorized to take proof of the debt.

The case of *Frisbey* v. *Thayer* (25 Wend., 396) does not seem to me to have any application to this case. A landlord caused goods to be seized under a distress warrant, which the tenant had mortgaged in actual good faith to a party under whom the defendant acted. The mortgage was executed while the property was on the demised premises, where they remained

Hall *v.* Stryker.

for some time after the giving of the mortgage; but the seizure for rent was made off the premises but within thirty days after the removal. The action was trover by the officer who served the distress warrant. The court refused to charge that the mortgage was void, for want of an immediate change of possession. The points decided were, that the statute requiring a possession to accompany sale and mortgage did not apply when the property was seized on a distress warrant, and that the act authorizing a landlord to pursue goods removed from demised premises for thirty days after the removal, applied only to such as belonged to the tenant at the time of the removal, and not to such as he had previously sold or mortgaged.

The remedy by distress was one which the law gave to a party himself, and his warrant was not in the nature of process issued by courts or officers upon proof of the creditor's debt. A landlord did not present himself in the character of a creditor within the meaning of the act. His rights were peculiar, arising out of the law of landlord and tenant, and were not, as the court held, of the same nature as those of common creditors seeking to enforce process for their debts.

I am of opinion, upon the whole case, that the attachment was a justification to the officer, provided he could maintain by proof that the property seized belonged to Robert Hall as against his creditors; and that the judgment of the Supreme Court should be reversed.

MARVIN, J. The statute declares, that every conveyance of an interest in lands, &c., or in goods, &c., made with intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, &c., with like intent, as against the persons so hindered, delayed or defrauded, shall be void. (2 R. S., 137.)

It is well settled, in cases where the sheriff is sued for taking goods, by one not a party to the judgment, that he cannot defend under the execution alone. This directs him to take the property of the person against whom the execution is issued,

and of course, if he takes the goods of another person, the execution will be no defence.

If the plaintiff .in such action shows a *prima· facie* title, the sheriff cannot attack such title, without producing the judgment upon which the execution was issued. There must have been a judgment or there could have been no execution, and the judgment is the best evidence of the relation of creditor and debtor, and no other evidence, in such a case, will be received. Upon the production of such evidence, the sheriff as defendant, or any one having a right to avail himself of the judgment and execution, may raise and litigate the question of fraudulent sale by the judgment debtor to the plaintiff. The judgment establishes conclusively the relation of creditor and debtor, and all are bound by it. It cannot be impeached or questioned collaterally, in the action by a third person for taking the goods as the goods of the judgment debtor. (*Candee* v. *Lord et al.*, 3 Comst., 269.)

The Court of Chancery would not entertain jurisdiction upon a creditor's bill, until the creditor had proceeded to judgment. As to the statute relating to the remedy in Chancery, it clearly requires that the creditor should have exhausted his remedy by judgment and execution. (2 R. S., 173.)

Does it follow, in all cases, that the relation of creditor and debtor must be established by judgment, before a sale made by the debtor can be questioned, on the ground of fraud as to the creditors of the vendor?

In certain actions and under certain circumstances specified, among which are those against a defendant who has absconded or concealed himself, or is about to remove any of his property from this State, or has assigned, disposed of or secreted, or is about to assign, dispose of or secrete, any of his property, with intent to defraud creditors, as mentioned in the act, the plaintiff may have the property of such defendant attached, as a security for the satisfaction of such judgment as the plaintiff may recover. The warrant of attachment may be obtained from a judge of the court in which the action is brought, or a county judge. It must be made to appear, by affidavit, that a cause

of action exists against the defendant, specifying the amount of the claim and the grounds thereof, and certain other facts specified. (Code, §§ 227–229.)

The warrant of attachment requires the sheriff to attach and safely keep the property of the defendant; and he is required to proceed in all respects in the manner required of him by law in cases of attachment against absent debtors. (§ 231.)

The plaintiff commences his action against the defendant, and the sheriff is required to attach and safely keep the property of the defendant. He is not authorized to take the property of any one other than the defendant, and if he does he is a trespasser. But if he takes property claimed by a person other than the defendant, how is such claim to be tried? and what will be the issues? The claimant sues the sheriff, and gives evidence of a purchase, by him, of the defendant in the action in which the attachment has been issued. If the purchase was in good faith, he has a good title, but if made with intent to delay, hinder or defraud the creditors of the vendor or other persons of their lawful suits, damages, &c., it was, as to such creditors or other persons, void, and as to them, the title of the property remained in the vendor, and the sheriff had not only the right, but was required, to attach and safely keep the property so sold. The sale is only void as to creditors or other persons specified in the statute, and no other persons have a right to question it. The question, however, constantly is, what shall be the evidence that the party who or in whose right the sale is attacked, is in fact a creditor, &c. And, as we have seen, in cases where the property has been taken on execution, the most numerous class of cases, the best and only evidence is, the judgment upon which the execution was issued, and that is conclusive. It is said, that in case evidence not conclusive is received, the trial will involve an issue between persons not parties to the action, and that any decision upon such issue will not bind such parties; and this is undoubtedly so. But it will not follow that the legislature could not dispense with the evidence by judgment, to establish the relation of creditor and debtor, and it seems to me that it has done so,

in a class of provisional remedies, in short, in this case. It has provided when and under what circumstances a plaintiff may have an attachment against the property of the defendant in the action. The statute carefully specifies what "shall appear by affidavit," and when such facts are made to appear, and an undertaking, as required by the statute, has been given, the warrant of attachment may be issued, requiring the sheriff to "attach and safely keep the property of the defendant, as a security for the satisfaction of such judgment as the plaintiff may recover." In my opinion, the warrant of attachment, when properly issued, is a complete protection to the sheriff or the plaintiff, in any action brought against him, provided he can show that the sale of the goods by the defendant in the action in which the attachment is issued to the plaintiff suing the sheriff, was fraudulent as to the creditors of such vendor and defendant, and that the affidavits, assuming them sufficient, upon which the warrant of attachment has been issued, must be regarded as establishing the character of the plaintiff as a creditor, in such action against him or the sheriff, by a third person, to recover the goods attached or their value.

It must be kept in mind, that the goods attached, or the proceeds of such as may be sold, are to be kept by the sheriff, "as a security for the satisfaction of such judgment as the plaintiff may recover." It is very clear, that the defendant in the attachment action cannot maintain any action for the taking of his property, and thus precipitate the trial of the issue whether he was the debtor of the plaintiff. That issue must be tried in the action against him, and, if he prevails on the trial, his property will be restored to him. And, in my opinion, one claiming title to the property attached, by purchase from the defendant in the attachment action, cannot raise the question that such defendant, his vendor, was not a debtor of the plaintiff suing out the attachment, or call upon such plaintiff or the sheriff in an action against him, to establish the relation of creditor and debtor between his vendor and the party suing out the attachment. And, unless he can maintain his title upon the ground that it is valid as against the creditors of his vendor,

Hall *v.* Stryker.

he must await the trial of the issue between the plaintiff attaching the property, and the defendant, his vendor.

I think *Candee* v. *Lord* (2 Comst., 269), in principle, quite instructive in this case. The principle established is, that a judgment obtained without fraud or collusion, is conclusive evidence in suits between creditors in relation to the property of the debtor, of the indebtedness of the latter, and of the amount of such indebtedness. Though such creditors were not parties to the record, Judge GARDINER says that the judgment rendered upon default, confession, or after contestation, without fraud or collusion, is, upon all questions affecting the title to his property, conclusive evidence against his creditors to establish, first, the relation of creditor and debtor between the parties to the record, and, second, the amount of the indebtedness. Other cases show that such judgment is conclusive evidence of the relation of creditor and debtor, in cases arising between the creditor and the vendee of such debtor. Now it seems to me that whenever one purchases property, with intent to defraud the creditors of the vendor, he takes it subject to the statute authorizing the property of his vendor to be seized, upon an attachment issued in an action against his vendor; and if the property he purchased shall be taken upon such attachment, he cannot, in an action against the sheriff, dispute the facts proved by the affidavits upon which the attachment was issued, but that such facts are as conclusive against him in the action brought by him as they would be in an action brought by the defendant (his vendor) against the sheriff: that such facts are as conclusive, in the action against the sheriff, to establish the relations between the plaintiff and defendant in the action in which the attachment is issued, as a judgment is in establishing the relation of creditor and debtor between the parties to the record. One who purchases property, with intent to defraud the creditors of his vendor, cannot complain that it is taken on attachment, under a special statute requiring certain facts to be proved, and held until his vendor, if he sees fit, makes defence against the claim and defeats the action. The vendee has no right to appear in such action and make

defence, nor can he compel his vendor to do so; and in the absence of collusion or fraud, he will, as to the question of creditor and debtor, be bound by their acts and the judgment rendered between them. If he is an honest purchaser, then he will recover, whatever may have been the relations between his vendor and the party suing him, and the question of *bona fides* in the purchase may be tried in his action against the sheriff.

All the cases cited by the learned judge delivering the opinion of the court below, were cases of the taking of the property on execution, except *Frisbey* v. *Thayer* (25 Wend., 396), which has no application to the present case. The question in that case arose under the statute authorizing a landlord to pursue and distrain goods removed from the demised premises, except where the goods had been sold before seizure, in good faith, &c. The tenant had mortgaged the goods, and the mortgagee had removed them before they were seized by the distress warrant. It was held that the goods could not be distrained: that the mortgage was valid between the parties as to the landlord, unless fraudulent in fact: that the property was not the property of the tenant, and that the statute making mortgages void as to creditors and subsequent purchasers, was not applicable; the learned judge adding, quite unnecessarily, "as the question there can only arise between judgment creditors and the mortgagee." *Belknap* v. *Hastings* (1 Den., 190,) was a case of distress for rent. Numerous questions were involved and litigated, some of them touching the validity of an assignment; and it was held that persons justifying under a distress warrant are not in a condition to impeach a conveyance made by the tenant on the ground of fraud against creditors. To enable a landlord to take such objection, he must, like any other creditor, obtain judgment and issue execution. The landlord in these cases had proceeded under the statute relating to a distress warrant for rent, and the cases were not embraced by the statute. He could no more distrain as a creditor than any other creditor could issue execution without a judgment. His special remedy, by dis-

tress, was as landlord. If he sought to recover the rent by action, he must, of course, resort to the same remedies given to other creditors, and it was not necessary to specify and limit such remedies. It is undoubtedly true that a simple creditor pursuing the ordinary remedy by action, without an attachment, cannot attack a sale made by his debtor as fraudulent, until he has obtained judgment. But no such question as we are now considering was present to the minds of the learned judges delivering opinions in the cases just cited.

For the reasons already stated, I think the judgment should be reversed, and there should be a new trial, costs to abide event.

DAVIES and WRIGHT, Js., concurred; SELDEN, ROSEKRANS and BALCOM, Js., thought that the question whether the plaintiff in the attachment was a creditor in point of fact is open to inquiry until he has obtained a judgment; and ROSEKRANS, J., thought that the party defending under the attachment was bound to give evidence of the debt on which it professed to be founded. EMOTT, J., expressed no opinion on that question. All the judges were for reversal on the principal question.

Judgment reversed, and new trial ordered.