## COURT OF APPEALS.

George Rinchey, respondent agt. Burdett Stryker, appellant.

Where an *attachment* is issued to the *sheriff*, he has a right to seize any property the defendants have disposed of, in any manner, *with intent to defraud their creditors*.

And the *plaintiff* in the attachment suit is not to be deemed a *mere creditor at large, after his attachment has been served,* but a creditor *having a specific lien* upon the property attached; and the sheriff, as the bailee of the plaintiff, has a *like lien ;* and on the trial in an action against the sheriff for wrongfully taking the property, he has a right to show, *before judgment in the attachment suit,* that the title of the purchaser from the debtors was fraudulent and void as against the attaching creditor.

*Argued June Term,* 1863 ; *decided October,* 1863.

This action was brought in the supreme court to recover the value of certain goods that the plaintiff alleged the defendant forcibly and wrongfully took from his possession and carried away, at the city of Brooklyn, in November, 1857. The defendant set up in his answer, for a justification, that he was the sheriff of Kings county ; that one of his deputies seized the goods by virtue of certain attachments granted by a justice of the supreme court, in certain actions commenced in that court, by divers persons, against William Cartwright and Moses R. Hassard ; that the attachments were issued upon affidavits showing that Cartwright and Hassard were colluding, assigning and disposing of their property with intent to defraud their creditors, or had assigned or disposed of the same with the like intent ; and that the goods, when seized, were the property of Cartwright and Hassard.

The action was tried at the Kings circuit in April, 1858, when it appeared that the goods taken by the defendant, deputy sheriff, were worth $2,929.64.

The defendant's counsel, in his opening to the jury, stated that the goods belonged to Cartwright and Hassard;

that they came into the possession of the plaintiff from one Parise, under a fraudulent sale or assignment; that Parise derived his alleged title to the goods by an assignment made to him by Cartwright and Hassard, with intent to hinder, delay and defraud their creditors, on the 18th day of November, 1857; that the plaintiff had notice of the fraud committed by Cartwright and Hassard, at the time he obtained the goods; and that the attachments were issued as stated in the answer, under which the defendant, by one of his deputies, took the goods.

The defendant's counsel then offered in evidence exemplified copies of the affidavits and undertakings on which each of the attachments was issued; also the original attachments, and exemplified copies of the judgment rolls in the actions against Cartwright and Hassard, in which the attachments were issued; the judgments in those actions having been recovered after the commencement of this action, which was commenced on the 23d day of December, 1857. He further offered to prove the assignment from Cartwright and Hassard to Parise was made with the intent, on the part of the assignors, to hinder, delay and defraud their creditors, and taken by Parise with the like intent; and that the plaintiff's title was fraudulent as against the creditors of Cartwright and Hassard; and that the debts existed, for which the attachments were issued, as stated in the affidavits on which they were issued.

The plaintiff's counsel objected to the admission of the evidence, and to each and every part thereof, on the following grounds: 1. That the defendant could not justify under the attachments, because the attaching creditors were general creditors merely, and not judgment creditors, and therefore not in a position to attack the assignment and sale, or the title either of the assignee or the plaintiff. 2. That the judgments offered in evidence, having been recovered since the commencement of this action, were not admissible. The judge sustained the objection on each of

the above grounds, and excluded the evidence so offered and every part thereof. To which decision and ruling the defendant's counsel excepted. By direction of the judge, the jury rendered a verdict in favor of the plaintiff for the value of the property and interest on such value.

The defendant's counsel moved for a new trial on the exceptions, at a general term of the supreme court in the second district; which motion was denied; and a judgment was there rendered against the defendant for the amount of the verdict, with costs. From which judgment he appealed to this court.

WM. D. BOOTH, *for appellant, cited and commented upon the following authorities: Code,* § 227; *chap.* 723, § 7, *Laws of* 1857; *Laws of* 1831, *chap.* 300; *Thayer* agt. *Willet,* 9 *Abb. R.* 325; *Patterson* agt. *Perry,* 10 *id.* 82; *Skinner* agt. *Oettinger,* 14 *id.* 190; *Kelley* agt. *Brensing,* 33 *Barb.* 123; *Schussel* agt. *Willett,* 22 *How. Pr. R.* 15; *Belmont* agt. *Lane, id.* 365; *Thayer* agt. *Willett,* 5 *Bosw.* 344; *and also numerous other authorities.*

JOHN H. REYNOLDS, *for respondent, cited and commented upon the following authorities: Reubens* agt. *Joel,* 3 *Kern.* 488; *Van Heusen* agt. *Radcliff,* 17 *N. Y. R.* 580.; *Andrews* agt. *Durant,* 18 *id.* 496; *Hastings* agt. *Belknap,* 1 *Denio,* 190; *Hall* agt. *Stryker,* 29 *Barb.* 105; *Bently* agt. *Goodwin,* 15 *Abb.* 82.

BALCOM, J. The main question in this case is, whether the defendant, as sheriff, could rightfully seize the goods in question and take them from the possession of the plaintiff, by virtue of attachments issued by a justice of the supreme court, in actions in that court against Cartwright and Hassard, on the ground that they, with the intent to hinder, delay and defraud their creditors, assigned the goods in question to Parise, who took them with the like

intent, and transferred the same to the plaintiff with notice of the fraud ?

. Section 229 of the Code authorizes the issuing of an attachment in an action for the recovery of money, where the defendant has assigned, disposed of or secreted, or is about to assign, dispose of or secrete any of his property with intent to defraud his creditors.

The attachments were regularly issued in actions for the recovery of money. But they were wholly useless as processes, unless they authorized the sheriff to seize the goods in question as the property of the defendants named therein, and gave him such a specific lien on the goods seized as enabled him to show their transfers to Parise and the plaintiff were fraudulent as against the creditors of Cartwright and Hassard.

The numerous authorities cited by the plaintiff's counsel have failed to satisfy me that an attachment is a useless process when the debtor has fraudulently assigned or disposed of his property before it is executed. They establish that a creditor at large, without any process or lien, cannot seize or hold the property of his debtor on the ground that he has transferred it with the intent to defraud his creditors. But none of them, except *Hall* agt. *Stryker* (29 *Barb.* 105), which was followed by the supreme court in this case, and induced the decision in *Bentley* agt. *Goodwin* (15 *Abb.* 82), show that an attaching creditor cannot prove, when sued for the property attached, that the plaintiff's claim thereto is invalid and rests upon a fraudulent transfer of the property by the debtor.

The cases mentioned in *Hall* agt. *Stryker*, which hold that an officer cannot justify, when sued by a stranger, for property he had taken on execution, without proving the judgment on which the execution was issued, as well as the execution itself, only tend to show that the production of the attachment by virtue of which the property has been seized, without the affidavit on which it was granted, is

insufficient as a foundation for the defence ; that the plaintiff's claim to the property rests upon a fraudulent transfer of the same to him by the defendant named in the attachment.

The remarks of the judges who delivered the opinions in *Frisby* agt. *Thayer* (25 *Wend.* 396), and *Hastings* agt. *Belknap* (1 *Denio*, 190), and the other kindred cases cited, that a landlord, who seizes off the demised premises by virtue of a distress warrant, cannot prove, when sued for the goods by one who has purchased them from the tenant, that such purchase was fraudulent as against the creditors of the tenant, were *obiter*, and unnecessary to the determination of the cases in which they were made. Besides, a distress warrant is not granted by a judicial officer, but is issued by the landlord in person ; and the right to seize goods of the tenant on such a warrant, after they are removed from the demised premises, did not exist at common law. But I am constrained to say, if there is not any substantial difference in principle between those cases and the one under consideration, I cannot assent to the dicta in them : For the statute referred to in those cases only prohibits the seizure of the goods of the tenant, carried off from the demised premises, " which shall have been sold, before such seizure made, *in good faith* and for a valuable consideration, to a person not privy to such fraudulent removal " (2 *R. S. 2d ed.* 413, § 17) ; and the right to distrain, without the right to prove that the distress was lawful, when sued for making it, is no right at all. I have much less hesitation in repudiating the dicta referred to, than I should if distress for rent had not been abolished by the legislature. This course will not tend to unsettle any rule of law now acted upon by the profession or people at large, and it will open the way for establishing a principle upon a just foundation, which must be constantly acted upon so long as attachments are issued against debtors who have disposed of their property with the intent to defraud their creditors.

The remark of JOHNSON, Ch. J., in *Andrews* agt. *Durant* (18 *N. Y. R.* 496), to the effect that a creditor cannot attack a fraudulent assignment of his debtor until he has proceeded to judgment and execution ; and similar ones by other judges, in *Reubens* agt. *Joel* (3 *Kern.* 488), should have been qualified, as DENIO, J., qualified his remarks in *Van Heusen* agt. *Radcliff* (17 *N. Y. R.* 580). He said : "When a conveyance is said to be void against creditors, the reference is to such parties when clothed with their . judgments and executions, or such other titles as the law has provided for the collection of debts." Judge BRONSON used similar language in *Noble* agt. *Holmes* (5 *Hill*, 194). He said : "The sale could not be impeached by a creditor at large ; it must be a creditor having a judgment and execution, or some other process which authorized the seizure of the goods." He also said, in *Van Etten* agt. *Hurst* (6 *Hill*, 311), before creditors can attack a sale by their debtor for fraud, "they must show a judgment as well as execution ; or where they proceed by attachment, they must show that the justice had. jurisdiction, and that the process was regularly issued."

Vice-chancellor SANDFORD held, in *Falconer* agt. *Freeman* (4 *Sand. Ch. R.* 565), that a creditor, who takes out a warrant of attachment under the act relative to absent and concealed debtors, thereby obtains a lien upon the property of the debtor proceeded against ; and if the sheriff be prevented from levying the warrant on the debtor's property, by means of fraudulent claims or transfers set up. in respect to the same, the court of chancery will aid the creditor in enforcing the lien, by injunction and otherwise, on the same principle that the court aids an execution creditor similarly obstructed.

The New York superior court held, in *Thayer* agt. *Willett, sheriff* (5 *Bosw.* 344 ; *S. C.* 9 *Abb.* 325), that a sheriff, acting under a warrant of attachment issued as a provisional remedy under the Code before judgment, who has

seized property in the possession of a vendee claiming title under a bill of sale from the defendant in the attachment, may show, in defence of an action against him by such vendee to recover the property, that the alleged sale was fraudulent as against the attaching creditor. And the decision in that case is supported by two well-considered opinions. The following cases agree with that : *Skinner* agt. *Oettinger* (14 *Abb.* 109); *Patterson* agt. *Perry* (10 *id.* 82); *Belmont* agt. *Lane* (22 *How. Pr. R.* 365); *Kelly, sheriff* agt. *Breusing* (33 *Barb.* 123). The same rule has been held in several other states; but it is unnecessary to cite the cases. Several of them are referred to by the judges of the New York superior court in *Thayer* agt. *Willett* (*supra*).

The fact that an attachment is issued in a case like this, before the debt is conclusively established on which it is founded, and that it may be subsequently shown by the defendant in the attachment that there was no such debt, is not a sufficient reason for holding that the attaching creditor cannot show that the property attached is in fact the debtor's, when sued for it by a third person who claims it by a title which is fraudulent as against the attaching creditor. Such third person may prove that no such debt existed until it is established by a judgment in the attachment suit. He may therefore defeat the attaching creditor on either of two grounds: 1st. That there was no debt to justify the issuing of the attachment; 2d. That he had a good title to the property in dispute when it was attached. Of course, the creditor or officer must first prove the existence of the debt for which the attachment was issued, when such debt has not been established by a judgment against the debtor. When that is done, the judgment proves it.

It certainly is not an insuperable objection to permitting all of this to be done, simply because it authorizes the trial of two different issues in the same action. Indeed, two different issues must be tried in the action, if formed

by the pleadings, though the creditor has previously reco-
vered a judgment against his debtor, and is able by it to
establish conclusively the existence of his debt

When the creditor has no such judgment, the party,
claiming that the property did not belong to the debtor
when it was seized, has two chances of success.   But when
the creditor has obtained such a judgment he has but one.
In other words, the conclusiveness of the judgment in effect
narrows the litigation down to a single issue.

It has been said, that although the creditor may be able
to show, when sued for the property attached, that a debt
was justly due him, for which the attachment was issued,
and yet be defeated in his action for the recovery of the
alleged debt.   It may also be said that he might be beaten
in the first action by failing to prove his alleged debt, and
succeed in establishing it in the second.

But this reasoning is no answer to the fact that the Code
authorizes an attachment whenever the debtor has disposed
of any of his property with the intent to defraud his cre-
ditors.   And it is right on principle, if not settled by
authority, that creditors should be permitted to attach the
property of their debtors before conclusively establishing
their debts by judgments, and thus prevent the consumma-
tion of fraudulent transactions which would deprive them
of any successful remedy.   And if, by the application of
this rule, fraudulent purchasers should occasionally be
beaten by persons who subsequently fail to establish their
alleged debts, in their actions against their debtors, the
only result would be that some concoctors of frauds would
be punished by wrong persons.   That is all.   A like result
would follow where the creditor recovers a judgment against
his debtor, and takes property on execution which the
latter had fraudulently disposed of, if such judgment should
snbsequently be reversed and the creditor finally beaten
by his alleged debtor, after having beaten the fraudulent

purchaser of the property in the action brought by such purchaser for the property.

But this has never been deemed a sufficient reason for preventing creditors from seizing the property of their debtors in the hands of fraudulent purchasers until after the existence of their debts has been conclusively and finally established.

The fact that the judgments against Cartwright and Hassard were recovered after the issues in this action were joined, was no reason for their rejection. Their recovery was not a matter that the defendant was obliged to set up in his answer. They were but evidence, though conclusive, of the existence of the debts for which the attachments were issued; which evidence the defendant did not have at the time he interposed his answer, to support it. If they had not been recovered, all the difference there would have been is, the defendant would have been obliged to prove the existence of the debts against Cartwright and Hassard by other and different evidence, and the plaintiff could have given counter evidence on that question.

I will add, that the justice's judgment, mentioned in *Doty* agt. *Brown* (4 *Comst.* 71), was removed into the Chenango common pleas by certiorari, where it was reversed; but, on a writ of error brought to the supreme court, the judgment of the common pleas was reversed, and that of the justice affirmed. The opinion was delivered by Justice NELSON, but it has never been published.

My conclusion is, that the attachments in this case authorized the defendant, as sheriff, to seize any property the defendants, named in them, had disposed of in any manner with intent to defraud their creditors. I hold that the persons who procured the attachments are not to be deemed mere creditors at large of Cartwright and Hassard after their attachments were served, but creditors having a specific lien upon the goods and chattels attached; and that the sheriff, as their bailee, had a like lien, and had the

right to show that the plaintiff's title was fraudulent as against the attaching creditors.

It follows that the evidence offered by way of defence to the action was erroneously rejected, and that the judgment of the supreme court should be reversed, and a new trial granted, costs to abide the event.

DAVIES, J., read an opinion, in which he came to the same conclusion.

DENIO, Ch. J., MARVIN, DAVIES and WRIGHT, JJ., were of opinion the affidavits, on which the attachments were issued, conclusively established the debt for which they were issued for all purposes in this action. The other four judges were of the contrary opinion, so that point was not determined.

All the judges, except EMOTT (who did not vote), agreed that the defence offered to be proved by the defendant was improperly excluded.

Judgment reversed, and a new trial granted, costs to abide the event.