# SUPREME COURT.

## Augustus W. Greenleaf and others agt. Peter R. Mumford and others.

When an *attachment* is issued under the Code, the plaintiff in the action obtains such a *lien* on the property attached as will entitle him to the intervention of the equitable jurisdiction of the court to remove or set aside all fraudulent claims and transfers, or any other fraudulent obstacles, in the way of the realization of the lien, in case the plaintiff should recover a judgment. (*Following the case of Rinchey agt. Stryker, 26 How. Pr. R. 75.*)

Where one of the defendants bought of several persons, in one day, various sums of American gold coin, in the whole amounting to about $110,000, and in currency to about $150,000, and gave for the gold his checks to the several sellers on a bank, which checks were all dishonored, and no explanations given or excuse offered subsequently why he did not make his account at the bank good; but on the contrary he immediately disposes of a large amount of money in a clandestine manner, by transferring a portion of it ($53,000) to his lawyer and friend, a *fraudulent intent* cannot be doubted, and the whole amount of such surreptitious transfer is to be deemed as still liable to any *attachments* which his creditors may have issued against it, or any portion of it.

A creditor who *first levies an attachment*, or an execution, has a preference over other creditors out of the property on which the levy is made. The maxim of the law applies, *vigilantibus non dormientibus jura subveniunt.*

The *signature of the judge* who grants a warrant of *attachment* is indispensable to its validity; without it there would be no assurance to the officer who executes it that it is genuine. But the same reason does not exist for adding the judge's signature to a *copy* of the warrant of attachment.

A *notice* accompanying a warrant of attachment that "all the property of the defendant in the attachment, and his effects, rights, and shares of stocks, with interest thereon and dividends therefrom, and the debts and credits of the said defendant now in possession of the said person, or under his control, will be liable to the attachment, and the said person is required to deliver all such property into the custody of the sheriff, without delay, with a certificate thereof," *is sufficient.* (*The decisions in Kuhlman agt. Orser, 5 Duer, 422; and Wilson agt. Duncan, 11 Abb. 3, of the N. Y. superior court, which decide that a general notice is not sufficient; in other words, that the precise property, its nature and amount, must be specified in the notice, not concurred in.*)

*New York Special Term, November*, 1865.

Motion by plaintiffs for judgment in an attachment suit against the defendants.

Jenkins, Opdyke & Ackerman, *attorneys, and*
D. Dudley Field, *counsel for plaintiffs.*

THOMAS S. SOMMERS, JOHN OAKEY, F. F MARBURY *and* WM. FULLERTON, *for the several defendants.*

CLERKE, J.    I. Since the decision in *Rinchey* agt. *Stryker* (26 *How. Pr. R.* 75), I consider it no longer an open question, whether, when an attachment is issued under the Code of Procedure, the plaintiff in the action obtains such a lien on the property attached as will entitle him to the intervention of the equitable jurisdiction of the court to remove or set aside all fraudulent claims and transfers, or any other fraudulent obstacles, in the way of the realization of the lien, in case the plaintiff should recover a judgment.    Undoubtedly, previous to that decision, a great diversity of opinion existed among the members of the bench and the bar relative to this right, many being of opinion that no such right existed until the plaintiff proceeded to judgment and execution, and had exhausted his common law remedies.    Nothing, however, appears in *Skinner* agt. *Stuart* (15 *Abb.* 391), sustaining this latter view.    That was an action avowedly brought in pursuance of the provisions of the Code of Procedure relative to the specific remedies afforded by those provisions, for the realization of the property of the defendant in the possession of third parties, or for the recovery of money due to him.    The plaintiff had not complied with the requirements of those provisions; and, even if he had, there was nothing in the case which authorized the interposition of the equitable or extraordinary jurisdiction of the court.    It exhibited no fraud, collusion or combination obstructing the ordinary legal process.

II. This action, then, having been properly brought, and the court having the right to afford the remedy prayed for, if the facts entitle the plaintiff to it, was the transfer of the $53,000 to Oakey by Mumford, fraudulent and void? and if it was, has the plaintiff obtained a specific lien upon it to the amount of his claim, to the exclusion of the

assignee of Mumford, and his other creditors ?   And first, as to the transfer of the $53,000, by Mumford to Oakey, I think the fraudulent intent cannot for a moment be doubted.   On the 12th day of August, 1865, he bought of A. L. Leyton & Co., Greenleaf (the plaintiff in this action) and many others, various sums of American gold coin, in the whole amounting to about $110,000 in gold, and in currency to about $150,000.   For this gold he gave his checks to the several sellers on the Mechanics' Bank.   These checks were all dishonored.   Undoubtedly it was very possible, by unexpected failure, or dishonesty on the part of the persons with whom he dealt, so that on the day in question he may have been rendered incapable of making good his account on that day, and the single circumstance that he had no funds in the bank at the time when the checks were presented, was not of itself conclusive evidence of fraud.   Therefore, no criminal prosecution could be maintained against him founded on this single circumstance.   The necessities of business require that the drawing of checks in cases of this nature, when there are no funds in the banks in the early portion of business hours, should be tolerated, where the bank is in the habit of certifying checks for the drawer.   But in the case before us no explanations are given, and no excuse appears why Mumford did not make his account at the bank good.   On the contrary, we find him at once disposing of a large amount of money in a clandestine manner, and instead of depositing it in the Mechanics' Bank, placing it elsewhere, and transferring fifty-three thousand dollars of it to his lawyer and friend, the defendant Oakey.   Taking all these circumstances together, purchasing gold to this large amount in currency of one hundred and fifty thousand dollars from the various dealers, giving his checks to the several sellers, which were all dishonored, and then making a clandestine and surreptitious disposition of a large amount of money immediately thereafter, can leave no room for any doubt

that the whole amount of this surreptitious transfer is to be deemed as still liable to any attachments which his creditors may have issued against it, or any portion of it; and that, as in other cases, the maxim of the law applies, *vigilantibus non dormientibus jura subveniunt.* The laws assist those who are vigilant, not those who sleep over their rights. As for example, the creditor who first levies an attachment or an execution, has a preference over other creditors out of the property on which the levy is made.

III. Has the attachment been executed in this case in such a manner as to give the plaintiff in the action before us the preference which the law gives to the most vigilant? It is objected by the counsel for the assignee that no copy of the warrant of attachment was served, because a copy of the judge's signature was not subscribed to it. The signature of the judge who grants the warrant is no doubt indispensable to its validity. Without it there would be no assurance to the officer who executes it that it is genuine. But I cannot conceive that the same reason exists for adding the signature to the copy. It is proper that the person who is in possession of property of the defendant, or who is indebted to him, should know the contents of the body of the warrant, and that it was issued, in order that he may be able to conform to what is required of him. The sheriff needs more than this, for on seeing that the warrant has not the signature of the judge subscribed to it, he would at once discover that he had no authority to execute it, and if he attempted to do so he would be a *tort feasor.* The next objection relative to the execution of the warrant is, that the notice accompanying the warrant was defective. This notice informs the person on whom it is served, that "all the property of the defendant in the attachment, and his effects, rights, and shares of stocks, with interest thereon and dividends therefrom, and the debts and credits of the said defendant now in possession of the said person, or under his control, will be liable to

the attachment, and the said person is required to deliver all such property into the custody of the sheriff without delay, with a certificate thereof." I have examined all the authorities referred to by the defendant's counsel. In *Orser* agt. *Grossman* (11 *How. Pr. R.* 520), there is no positive decision on this subject. The language of the court (the court of common pleas) is : " It is questionable whether a general notice that the sheriff attaches all the property in the hands of the debtor of the defendant in the attachment, is a sufficient attachment under the Code ;" and they decide the case on another point. In *Kuhlman* agt. *Orser* (5 *Duer*, 422), and *Wilson* agt. *Duncan* (11 *Abb.* 3), the superior court undoubtedly did decide that a general notice was not sufficient ; in other words, that the precise property, its nature and amount, must be specified in the notice. I am not aware of any decision upon this subject, rendered by this court, in any district of this state. I confess, in the absence of such a decision, I am not inclined to follow those in the superior court, to which I have above referred. To require so precise a specification in all cases would be impracticable, and would deprive many a creditor of the remedy which this process affords. Many plaintiffs are ignorant of the precise amount and even nature of the property belonging to their debtors in the hands of third parties, although they may have abundant reason to believe that there is some property in their hands at the time of issuing and serving the attachment. He may obtain the information, or compel it in the manner provided by section 236 ; but this is after the attachment has been issued, and notice of it served ; and in the meantime, if the reasoning in the cases referred to is correct, there is nothing to prevent the person on whom the notice is served from delivering the property to the defendant, or to prevent a debtor of the defendant from paying him the debt due. I do not think the legislature intended to deprive creditors of the benefit of this provisional remedy merely because

they were ignorant of the precise nature and amount of a fraudulent or non-resident debtor's property in the hands of third parties, within the jurisdiction of the court. No serious inconvenience can occur by the absence of this specification in the notice. The copy of the warrant which the notice accompanies, always states the exact amount claimed, and I cannot see, therefore, what embarrassment the holder of the property can be subjected to by the generality of the notice. He knows what the property is, and its amount, and by examining the warrant he can easily ascertain the amount of the claim. The plaintiff in the action requires only that amount with costs, and nothing more ; or if the holder surrenders the whole to the sheriff and it exceeds the amount of the claim, he is exonerated from all further liability ; the property is in the safe custody of the law. In the case before us, the Nassau Bank could certainly have suffered no wrong or inconvenience from the want of this specification. The officers of the bank knew the exact amount deposited with them, and they knew equally well from the warrant, the precise amount of the claim. In *Kuhlman* agt. *Orser*, to which I have been referred, the court says, that the sheriff is required by section 232 to make an inventory of the property, and if he has sufficient information to enable him to make an inventory, he has sufficient to enable him to give notice specifying the property. On the contrary, the provisions of the Code presume no such thing. He is not obliged to make an inventory forthwith. After serving notice of the attachment, he can require a certificate from the individuals or corporation in possession of the defendant's property, and if they refuse to furnish it, they can be required to do so by the order of the judge, and obedience to such order may be enforced by attachment. In my opinion, the legislature did not intend that the sheriff should make this inventory on the day, or immediately after the day upon which he serves the attachment; nor did it require of him

that he should have sufficient information at the time of the service to enable him to give a notice containing an exact specification of the property, for the reason that it provides a method by which he could procure this information after the attachment has been issued, and notice of it has been given to the holder of the defendant's property. I consider, therefore, that the notice served in this case was sufficient. As to the objection that the notice was defective in being served only on the Nassau Bank before the execution and delivery of the assignment; the law requires that the notice should be left with the debtor, corporation or individual holding such property. In this case the Nassau Bank held the property; the sum of $53,000 was actually deposited in its vaults at the time, and I have shown that this money at the said time belonged to the defendant Mumford, because the transfer which he endeavored to make of it was fraudulent, and therefore void.

Judgment for the plaintiff, in conformity with the prayer of the complaint.