(18 Misc. Rep. 464.)

SIELING v. CLARK.

(Supreme Court, Appellate Term, First Department. November 25, 1896.)

1. FRAUD—PRIMA FACIE CASE—PASSING BAD CHECKS.
    A prima facie case of fraud is made out by proof that a party induced another to cash his checks when he had not enough funds in the bank to meet them.

2. SAME—QUESTION FOR JURY.
    Where one drew checks against a bank in which he had not enough funds to meet them, the question whether the fact that he had an account with the

bank, and kept on depositing and drawing money, furnished reasonable expectation that the checks would be paid, is for the jury.

**8. TRIAL—INSTRUCTIONS—PREJUDICING JURY.**

It is error for a judge, in an action for deceit, after instructing the jury that defendant can be committed to jail if he does not pay the judgment, to add that he thinks plaintiff has presented a "very thin" case, since this is apt to prejudice the jury against plaintiff. .

Appeal from Ninth district court.

Action by Herman F. Sieling against Jacob E. Clark. There was a judgment in favor of defendant, and plaintiff appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

W. E. Benjamin, for appellant.

D. M. Van Cott, for respondent.

McADAM, J. The action was to recover $150, obtained by the defendant from the plaintiff on three checks of the defendant for $50 each, which the plaintiff cashed for him. The checks were drawn by the defendant, signed "J. E. Clark, Trustee," to the order of "J. E. Clark," upon the Merchants' Exchange National Bank, and were dated, respectively, May 13, 15, and 16, 1895, and indorsed by the defendant to the plaintiff. The action was in form for deceit, upon the ground that on the morning of May 13, 1895, when the plaintiff cashed the first check of $50, the defendant had not a dollar in the bank to meet it. On the contrary, his account was overdrawn $4.95. On the morning of the 15th, when the defendant got the second check cashed, instead of having $100 in the bank to meet the two checks, he had but $57.11 there. On the morning of the 16th, when he got the third check cashed, he had but $40.11 in the bank, and on the following morning had but $18.36 to his credit therein. The defendant claims that he deposited $569 on May 17th, but checks were immediately drawn against it, and the money drawn out before the plaintiff's checks were presented. Other deposits were made by the defendant, but his daily balances were exceeding small. The plaintiff deposited the checks in the Hamilton Bank, where he kept his account, and they came back marked "N. G." He called upon the defendant, who said there must be some mistake in his account, and to again present them. They were again presented, and came back with the same mark. When called upon subsequently for an explanation, the defendant said he was in trouble, and would make the checks good.

Persons who obtain property on bank checks, representing them to be good, when they knew they were not, have been convicted (Smith v. People, 47 N. Y. 303; Foote v. People, 17 Hun, 218; Lesser v. People, 73 N. Y. 78); and the Penal Code contains stringent provisions on the subject of false tokens (sections 529, 569). Even when no oral representation is made, the act of drawing and issuing a check amounts to a representation that the drawer keeps an account with the drawee, and that there are funds on deposit to meet it. Daniel, Neg. Inst. §§ 1597, 1629. The drawing of a bank check presupposes the existence of a fund on deposit over which the drawer has a disposing power. Morrison v. Bailey, 5 Ohio St., at page 16;

Espy v. Bank, 18 Wall., at page 620.   It is only where there is an
actual deposit that a drawer has a right to expect that his drafts
will be honored.   "The giving of a bank check is universally under-
stood in commercial circles as an affirmation that there are funds on
deposit to meet it, and the payee receives it on that understanding.
But if, in fact, the check is drawn on a bank where the drawer had
no funds, and without any reasonable expectations on his part that
it will be paid, the fraud is manifest."   Cooley, Torts (2d Ed.) p.
560.   See, also, Merchants' Bank v. State Bank, 10 Wall., at page
647; Bull v. Bank, 123 U. S., at page 111, 8 Sup. Ct. 62.   The drawer
is bound to know the state of his account with his bank, and if he
withdraws funds which he had in the drawee's hands when he drew
the check, and thereby defeats its payment, he commits a fraud on
the holder.   Daniel, Neg. Inst. §§ 1081, 1596.   The drawing of checks
without funds to meet them is, when unexplained, a badge of fraud.
Greenleaf v. Mumford, 19 Abb. Prac. 469, 30 How. Prac. 30.

In Brown v. Montgomery, 20 N. Y. 287, the court held that:

"When a business man in a commercial town fails to meet his paper, payable
at a bank, and especially his checks upon the bank at which he keeps his account,
the natural inference which one draws is that he is no longer able to pay his
debts.   Such a circumstance may occur from oversight or accident, but there
are exceptional cases.   The failure to meet the paper is in itself a suspension of
payment; and notice of the fact, unaccompanied with any explanation which
would give it a different character, is notice of the commercial failure of the
party."

See, also, Booth v. Powers, 56 N. Y., at page 32.

A person advancing to another the full face value of a check has
the undoubted right to expect that the draft represents the equiva-
lent of the money advanced upon it, and will procure that amount
on presentation.   If the one inducing the advance knows that such
result cannot follow, and the person who has parted with his money
is deceived, to his injury, is it not a deceit for which the one at fault
is answerable?   We think it is.   The rule is that every one must
be presumed to have intended the natural and probable consequences
of his acts; and when his acts are voluntary, and necessarily operate
to defraud others, he must be deemed to have intended the fraud.
Coursey v. Morton, 132 N. Y. 556, 30 N. E. 231.

The acts of the defendant as proved made out a prima facie case
of fraud, and it became his duty to furnish some explanation which
would give them a different character.   Whether the facts that the
defendant actually kept an account with the bank on which the
checks were drawn, and that he kept on depositing money and draw-
ing against it, furnished reasonable expectations that the checks
would be paid on presentation, this, supported by any explanations
the defendant had to offer in justification, was a question exclusively
for the determination of the jury, upon the evidence adduced as to
fraudulent intent.

The justice, in his charge, among other things, said:   "Although I
did not intend to express any opinion, I think it is a very thin case,
and I hesitated in submitting the case to you."   To the last portion
of this charge the plaintiff excepted.   The justice had previously in-
structed the jury that the case differed from the ordinary action of

debt, because the defendant could be committed to jail if he did not pay the judgment. With this admonition in mind, the charge that it was a "very thin" case was calculated to leave the jury to find for the defendant, and they did so. The definitions of the word "thin" (ignoring the adverb "very"), as given by Webster, show the charge to be objectionable. These are, some of them: "Slim," "small," "slender," "slight," "flimsey." The case presented by the plaintiff does not permit of any such criticism. Though a judge, in charging the jury, may express an opinion, so long as he does not instruct them to find in accordance with such opinion, and fairly submits to them the facts (Baylies, Trial Prac. 236), yet, as was justly said in Sindram v. People, 88 N. Y., at page 202, "it is desirable that the court should refrain, as far as possible, from saying anything to the jury which may influence them either way in passing upon controverted questions of fact, and perhaps comments on the evidence might be carried so far as to afford ground for assigning error." And in Hoffman v. Railroad Co., 87 N. Y., at page 32, the court said: "In view of the just regard which is paid by jurors to the opinion of the judge, it is doubtless, proper that, in a case of conflicting evidence, he should use great caution in expressing his opinion."

Upon the entire case, the jury were to weigh the evidence, to the end that they might fairly determine whether the defendant did the acts complained of with a fraudulent or an honest intent; and, in view of the issue and the character of the proofs, we think the charge of the justice may have had an effect upon the jury prejudicial to the plaintiff. It could hardly be otherwise.

For this reason, the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.