(158 App. Div. 528.)

PHELPS et al. v. McQUADE.

(Supreme Court, Appellate Division, First Department. October 31, 1913.)

1. SALES (§ 234*)—BONA FIDE PURCHASERS OF STOLEN GOODS.

In a case of common-law larceny the thief acquires no title, and a bona fide purchaser from him obtains none which is good against the owner.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 645, 657–677, 679, 680; Dec. Dig. § 234.*]

2. SALES (§ 234*)—COMMON-LAW LARCENY—BONA FIDE PURCHASER.

Where defendant's vendor represented himself as another person, and thus obtained goods upon credit, plaintiffs intending, however, to sell the goods to defendant's vendor and pass title to him, he was not guilty of common-law larceny, but obtained such title that a bona fide purchaser from him might hold the property as against plaintiffs.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 645, 657–677, 679, 680; Dec. Dig. § 234.*]

3. SALES (§ 234*)—PROPERTY OBTAINED BY FRAUD—BONA FIDE PURCHASER.

A bona fide purchaser for value without notice will be protected even where his vendor obtained the goods by fraud, if the fraudulent act is a felony by statute only and would not have been a felony at common law.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 645, 657–677, 679, 680; Dec. Dig. § 234.*]

Appeal from Trial Term, New York County.

Action by William R. Phelps and another against Dennis Charles McQuade. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Bartley J. Wright, of New York City, for appellant.

Monteith Gilpin, of New York City (Hartwell Cabell, of New York City, of counsel), for respondents.

CLARKE, J. The plaintiffs were jewelers. On February 15, 1911, one Walter C. Gwynne falsely represented himself to the plaintiffs to be Baldwin J. Gwynne, a resident of the Lincoln Hotel in Columbus, Ohio, with a satisfactory rating in the reports of the Dun and Bradstreet Mercantile Agencies, and, later on the same day, the manager of Jules S. Bache & Co., bankers, identified the said Walter C. Gwynne to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiffs' manager as being Baldwin J. Gwynne of Columbus, Ohio. That was brought about in this way: Gwynne had become acquainted with one of Bache's customers in an uptown hotel and had told this customer that he had had a falling out with his sweetheart, that he had some jewelry he wished to dispose of, and asked this gentleman if he would be willing to purchase any of these goods. He said he could not take them back to the parties that he had purchased them from. After some conversation, the gentleman decided to purchase one of these pieces and asked him what the name was. He told him Baldwin J. Gwynne, and so this customer of Bache's wrote out a check for the amount agreed upon. After this the supposed Baldwin J. Gwynne went down to Bache's office to cash the check and was told that as he was not known he would have to identify himself. He replied that would be very easy; he would call the maker of the check. This was satisfactory to Bache & Co. The maker did call and told the bankers that this was the person the money was intended for.

The plaintiffs, relying upon the representations of Gwynne and said identification, sold him a ring, a gold mesh purse, and a diamond and pearl scarf pin of the aggregate value of $838, and delivered the articles to him under the belief that they were delivering the same under the terms of a sale on credits to Baldwin J. Gwynne of the Lincoln Hotel of Columbus, Ohio, and whom they found to be satisfactorily rated in the said Mercantile Agencies' reports.

Thereafter Gwynne sold the jewelry to the defendant, McQuade, for a valuable consideration. It is admitted that McQuade was a bona fide purchaser for value, without any notice of any defect in the title. Due demand was made and refused. Both sides moved for judgment, and the court granted judgment to the plaintiffs for the immediate possession of the property or for the sum of $838 with interest from the commencement of the action.

The question is presented as to which of the two innocent parties, the original owners, or the bona fide purchaser, will have to stand the loss.

[1] The careful consideration of the cases and the authorities reduces the question to the determination of whether the transaction by which Gwynne obtained possession of the jewelry from the plaintiffs was or was not common-law larceny. If it was, I think the authorities are in accord that no title passed and that recovery can be had from the innocent purchaser. The possession of personal property obtained by common-law larceny confers no title which can protect an innocent purchaser from the thief.

[2] I have reached the conclusion that the transaction does not come within the definition of common-law larceny. This property was obtained by Gwynne by fraud and false representations. It was larceny, but statutory larceny. He falsely represented to the plaintiffs the existence of certain material facts; that he was Baldwin J. Gwynne; that he resided in the Lincoln Hotel at Columbus; that he was rated for credit in Dun and Bradstreet. Dealing face to face with him, upon the investigation they made and the identification they received, they gave the jewelry to the identical man with whom they were dealing.

They were deceived by his false representations, and yet they intended to pass to the person whom they believed him to be not only the possession but the title to the property upon the credit which he asked.

[3] A bona fide purchaser for value without notice will be protected even where his vendor obtained the goods by fraud, if the fraudulent act is a felony by statute only and would not have been a felony at common law.

In American Sugar Refining Co. v. Fancher, 145 N. Y. 552, 560, 40 N. E. 206, 208 (27 L. R. A. 757), Andrews, C. J., said:

"Much was said on the argument upon the difference between a trespasser taking and disposing of the property of another and the case of a sale of personal property to a vendee induced by fraud. It is the law of this state, as in England, that title passes on such a sale to the fraudulent vendee, notwithstanding that the crime of false pretenses is included in the statute definition of a felony, but which was not such at common law. Barnard v. Campbell, 58 N. Y. 76 [17 Am. Rep. 208]; Wise v. Grant, 140 N. Y. 593 [35 N. E. 1078]; Benj. on Sales (6th Ed.) § 433; Fassett v. Smith, 23 N. Y. 252; Benedict v. Williams, 48 Hun, 124."

In People v. Miller, 169 N. Y. 339, 62 N. E. 418, 88 Am. St. Rep. 546, Miller was indicted under the common-law count for larceny. The court said:

"There can be no doubt that the complainant delivered the money to the defendant for the purpose of speculation, with the understanding that the deposit should be returned with the accumulated profits, and had the defendant actually used the money in speculation, however improvident or reckless, and lost, his act would not amount to larceny. But it is plain that he never intended to use the money in speculation. The sole purpose of the pretense and device referred to was to enable him to get possession of the money of others and to appropriate it to his own use. * * * The jury were authorized to find, and by their verdict have found, that the complainant did not intend to part with the title or the possession of the money, but merely to give the defendant the custody of it for the purposes specified. * * * The real question is whether, upon any view of the evidence which the jury was authorized to take, the defendant could be convicted of larceny as that offense was known at common law. If so, the verdict should be sustained. Larceny, as defined by section 528 of the Penal Code, embraces every act which was larceny at common law besides other offenses which were formerly indictable as false pretenses or embezzlement. The offense of larceny at common law is established by proof on the part of the prosecution showing that the defendant obtained possession of the property by some trick, fraudulent device, or artifice, animo furandi, with the intention at the time of subsequently appropriating it to his own use. * * * The learned counsel for the defendant contends that the proof in this case established no criminal offense other than obtaining money by fraudulent pretenses, and since that offense was not stated in the indictment the defendant was improperly convicted, and such was evidently the view of the majority of the learned court below. It is very doubtful, however, if such a charge could be sustained by the proof in this case. False pretenses, as understood in the criminal law, as a means of obtaining the title or possession of money or personal property, import an intentional false statement concerning a material matter of fact upon which the complainant relied in parting with the property or in delivering the possession. It would be difficult to show that the defendant in this case made any material false statement concerning any existing fact. His statements were all promissory in nature and character. He represented to the public very little, if anything, concerning any fact existing at the time. His statements consisted in persuading the depositors that he could and would obtain for the use of their money large profits in the form of dividends. These statements were all in the nature of promises, and,

although they were very effective in producing the result desired by the defendant, they would hardly constitute the basis for a criminal charge of obtaining money by false pretenses."

On the other hand, in People v. Dumar, 106 N. Y. 502, 13 N. E. 325, the Court of Appeals reversed a conviction upon an indictment for common-law larceny; the proof showing that the defendant obtained possession of the property by fraudulent pretenses and representations made as to certain securities given by him in order to induce the sale.

In Mercantile National Bank v. Silverman, 148 App. Div. 1, 132 N. Y. Supp. 1017, Mr. Justice Laughlin said:

"With respect to the sale and delivery of property to an imposter, where the vendor passes on the question of his identity, it has been held that the title passes, although the transaction may be rescinded for fraud."

One of the cases cited by him was Edmunds v. Merchants' Transportation Co., 135 Mass. 283. In that case a swindler, falsely representing himself to be Edward Pape of Dayton, Ohio, a reputable merchant, bought of plaintiffs in Boston the goods which were the subject of the suit. Plaintiffs, on the ground that there was no sale, endeavored to hold defendants as carriers for delivery of the goods to the swindler. It was held that title passed from the plaintiffs to the fraudulent vendee and judgment for the defendants was affirmed. The court said:

"We think it clear, upon principle and authority, that there was a sale, and the property in the goods passed to the purchaser. The minds of the parties met and agreed upon all the terms of the sale, the thing sold, the price, and time of payment, the person selling and the person buying. The fact that the seller was induced to sell by fraud of the buyer made the sale voidable, but not void. He could not have supposed that he was selling to any other person; his intention was to sell to the person present, and identified by sight and hearing; it does not defeat the sale because the buyer assumed a false name, or practiced any other deceit to induce the vendor to sell."

The property in question having thus been sold to defendant's vendor, although the sale was brought about by fraud and false pretense, the plaintiffs intended to pass title as they transferred the possession. The sale was merely voidable and had not been rescinded before the purchase by the defendant, who was an innocent purchaser for value. Under these circumstances, I reach the conclusion that this judgment is wrong, and that the plaintiffs, and not the bona fide purchaser, must stand the loss.

The judgment should be reversed, with costs and disbursements, and judgment directed for the defendant, with costs. All concur.