Louis Amols, Appellant, *v.* Max Bernstein, Respondent.

First Department, November 27, 1925.

Sales — validity of contract — fraud by buyer — third person secured possession of ring from plaintiff on forged check given in payment and exchange of another ring secured from another person on forged check — said third person pawned ring with defendant — defendant acquired no title — plaintiff may replevy ring or recover value thereof.

Title to a diamond ring owned by the plaintiff did not pass to a third person who pretended to buy the same but who gave in payment therefor a forged check and another diamond ring which said third person had obtained from another on a forged check, for the act of the third person in procuring possession of the ring from the plaintiff constituted common-law larceny and common-law forgery and title did not pass to him.

Accordingly the defendant, a pawnbroker, who received the ring as security for a loan made to said third person, acquired no title thereto or lien thereon and, therefore, the plaintiff is entitled to recover the ring or its value.

Appeal by the plaintiff, Louis Amols, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 8th day of January, 1925, reversing a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Fifth District, in favor of the plaintiff.

*Stewart Maurice*, for the appellant.

*Michael J. Sweeney*, for the respondent.

Merrell, J.:

The action was brought by the plaintiff in replevin to recover from the defendant, a pawnbroker, the possession of a diamond ring of the value of $900. Admitting the possession of the ring in question, the defendant alleges as an affirmative defense that he is an innocent pledgee of the ring without notice, and has a lien thereon by virtue of a loan made.

The evidence upon the trial in the Municipal Court was to the effect that on February 19, 1924, two men came to the plaintiff's place of business and examined a diamond ring then on display in the plaintiff's shop, the sale price of which was marked as $900;

that one of the parties, representing himself to be a man by the name of Gorey, and whose right name was Mitchell, stated to the plaintiff that he would purchase the $900 ring, providing the plaintiff would take in exchange a ring which he, Mitchell, then produced and which he claimed to have purchased in Buffalo for $550; that the plaintiff made some inquiry as to Mitchell's ownership of the ring which he offered in exchange for plaintiff's ring, and finally told him that the most he could allow him was $400 for the ring, and that if Mitchell would give him the ring and $500 he would make the exchange. Mitchell finally agreed to such arrangement, but stated that he would have to give a check for the $500, and in response to plaintiff's suggestion that he did not know the would-be purchaser, took from his pocket a card bearing the name of Gorey Automobile Company, Bedford avenue, New York. Plaintiff told him he was interested in the check if it was good, and Mitchell suggested that the plaintiff ring up the bank, and that plaintiff would be told whether his check was good for $500. Plaintiff did ring up the bank, and in reply to his inquiry was informed that the Gorey Automobile Company was good for much more than $500. On the strength of such information plaintiff took the ring which Mitchell offered in exchange and the check for $500, signed by Gorey Automotive Parts Company, James C. Gorey, president, which check Mitchell, representing himself to be Gorey, then delivered to the plaintiff. When the check was presented at the bank it was found to be a forgery.

It was stipulated at the trial that on said date, February 19, 1924, the man Mitchell obtained the diamond ring from the plaintiff by giving in exchange therefor a forged check in the sum of $500, together with a diamond ring which said Mitchell had previously obtained from another person by giving another forged check. It was further stipulated that two days later the diamond ring which Mitchell had thus obtained from the plaintiff was pledged with the defendant, Max Bernstein, a pawnbroker, by said Mitchell as security for a loan of $450 then made by Bernstein to Mitchell, which loan has not been repaid.

The trial justice in Municipal Court, upon the foregoing facts, held that Mitchell obtained the ring in suit from the plaintiff by fraudulent representation, device or artifice, with intent to appropriate the same to his own use, and awarded possession of the ring in question to the plaintiff, with costs, or, if the same be not delivered, then that the plaintiff recover judgment against the defendant in the sum of $959.95. An appeal was taken from said judgment to the Appellate Term, and the latter court unanimously reversed the judgment of the Municipal Court, directing a dis-

missal of the complaint on the merits, with costs. The determination of the Appellate Term was upon the authority of *Phelps* v. *McQuade* (220 N. Y. 232). Application for leave to reargue was denied by the Appellate Term, as was also leave to appeal to this court. Subsequently an order was made by the presiding justice of this court permitting an appeal to be taken from the determination of the Appellate Term. (See 212 App. Div. 874.)

I am of the opinion that the Municipal Court was right in awarding the possession of the ring in question to the plaintiff, or, in the event possession could not be delivered, then that the plaint'ff recover of the defendant the money damages allowed. The possession of the ring in suit was obtained from the plaintiff by Mitchell without any consideration therefor whatever, and in part by means of a false and fraudulent instrument, namely, the forged check which Mitchell had made at the time of obtaining the ring and through the exchange of another ring, the possession of which had come to Mitchell through another forged check. I think the law is well settled that title to personal property fraudulently or feloniously obtained does not pass to the wrongdoer, where, as here, his wrongful act was a crime at common law. In *People* v. *Miller* (169 N. Y. 339) the Court of Appeals (at p. 350) thus defined common-law larceny: " The offense of larceny at common law is established by proof on the part of the prosecution showing that the defendant obtained possession of the property by some trick, fraudulent device or artifice, *animo furandi*, with the intention at the time of subsequently appropriating it to his own use."

Clearly the acts of Mitchell in obtaining possession of plaintiff's ring were within such definition of common-law larceny. Mitchell obtained possession of the ring from plaintiff through a check which he then and there forged claiming to be the president of the Gorey Automotive Parts Company, and by delivering another ring which he had obtained by means of a forged check. The last-mentioned ring and the forged check were delivered to the plaintiff with the obvious intention of appropriating the ring to his own use. He certainly " obtained possession of the property by * * * fraudulent device * * * *animo furandi*, with the intention at the time of subsequently appropriating it to his own use." The case of *Phelps* v. *McQuade* (220 N. Y. 232), upon which the Appellate Term based its reversal of the Municipal Court judgment, differed from the case at bar in that in that case goods were delivered upon credit and the promise of the purchaser to pay therefor, whereas, in the case at bar possession of the ring was obtained by Mitchell by means of the fraudulent device of a forged check and the delivery of another ring to which he had no title. In principle,

Mitchell obtained no more right to the possession of the ring in suit through the fraudulent device to which he resorted than he would have obtained if he had surreptitiously removed the ring from plaintiff's show case when the latter was not looking. He obtained no better title to the ring than he would have obtained if he had delivered to the plaintiff in payment therefor counterfeit money. In *Shipply* v. *People* (86 N. Y. 375) the Court of Appeals held that title to merchandise did not pass where it was obtained by means of a worthless check coupled with misrepresentations as to the identity of the person presenting the same. In that case the plaintiff in error, after arranging to have the goods delivered to an expressman " C. O. D.," sent an accomplice posing as an expressman and to whom the merchandise was delivered in return for a worthless check given the owner. Holding that such acts constituted common-law larceny the Court of Appeals, per DANFORTH, J. (at p. 379) said: " The prisoner received the goods from Story without payment of money or other thing of value. The jury may have found that this was his scheme at the beginning, and thus that there was on his part a felonious intent — an *animo furandi* — pervading the transaction and continuing to the end; that there was no delivery by the owner or parting with the title."

The case at bar is much stronger than that passed upon by the Court of Appeals in the case last mentioned, as in the case at bar not only was the check given by Mitchell worthless, but it was a forgery then and there perpetrated. Mitchell obtained this ring under circumstances rendering him guilty of forgery at common law and thereby he obtained no title to or right of possession thereof, nor could he give to the defendant any better title than he thus obtained. When the case of *Phelps* v. *McQuade* (*supra*) was before this court (158 App. Div. 528) this court distinctly held that title to property obtained through common-law crime did not pass to the vendee or pledgee of the wrongdoer. This court, per CLARKE, J., held (at p. 530): " The careful consideration of the cases and the authorities reduces the question to the determination of whether the transaction by which Gwynne obtained possession of the jewelry from the plaintiffs was or was not common-law larceny. If it was, I think the authorities are in accord that no title passed and that recovery can be had from the innocent purchaser. The possession of personal property obtained by common-law larceny confers no title which can protect an innocent purchaser from the thief. * * * A *bona fide* purchaser for value without notice will be protected even where his vendor obtained the goods by fraud if the fraudulent act is a felony by statute only and would not have been a felony at common law." I think the

law is as thus enunciated by this court, and that the acts of Mitchell clearly constituted a felony at common law. Mitchell was guilty of common-law forgery in making and delivering to the plaintiff the check by virtue of which he obtained possession of the plaintiff's ring. (*Marden* v. *Dorthy,* 160 N. Y. 39, 53, 54.)

There was, therefore, never any sale by the plaintiff of the ring in question to Mitchell. Mitchell obtained possession thereof through common-law larceny and common-law forgery, and obtained no title which authorized him to deliver said ring to the defendant, or which would protect the defendant's present possession thereof.

It follows that the determination of the Appellate Term should be reversed, and the judgment of the Municipal Court affirmed, with costs to the appellant in all courts.

CLARKE, P. J., DOWLING, McAVOY and BURR, JJ., concur.

Determination reversed and judgment of the Municipal Court affirmed, with costs and disbursements to the appellant in this court and in the Appellate Term.