HARRY A. TOMPKINS, as Commissioner of Public Welfare of the Tioga County Public Welfare District, Plaintiff, *v.* MARIE RODENBERGER et al., Defendants.

Supreme Court, Trial Term, Tioga County, March 17, 1951.

*Howard W. Robison* and *Paul C. Gouldin* for plaintiff.

*Truman & Parmerton* for First National Bank of Newark Valley and another, defendants.

*Frederick Boyce Bryant* for Robert Marshall, individually and doing business as Marshall Bros. Hatchery, defendant.

McAvoy, J. The plaintiff brought this action, which was tried before the court, to rescind upon the ground of fraud, and cancel of record, a deed given to the defendant, Marie Rodenberger. The defendant First National Bank of Newark Valley claimed to be a mortgagee of this defendant in good faith and without notice of the fraud. The defendants, John Niemi and Robert Marshall, are attachment creditors of the defendant Rodenberger.

The proof shows that on August 11, 1950, the defendant Rodenberger gave plaintiff's attorney her personal check in the amount of $3,150, as consideration for the deed of certain premises located in Newark Valley. The check was drawn on the First National Bank of Milford, Pennsylvania. When it was presented for payment, shortly after the delivery of the deed, there were no funds in the bank to meet it. The evidence is ample to show that the check was given with intent to defraud plaintiff and obtain the deed.

On the day the deal was closed, plaintiff's attorney to whom the check was made payable, deposited the same in his account and then gave his personal check in payment of two prior mortgages upon the premises. At the same time he turned over to his client, the plaintiff, his personal check for the net amount due him.

Prior to the date of closing this transaction, the defendant Rodenberger had negotiated with the defendant First National Bank of Newark Valley, for a mortgage loan upon the premises she was about to purchase from plaintiff, as aforesaid. The

bank gave her a memorandum of the terms of the proposed mortgage, which she delivered to her attorney at Owego, New York. This attorney drew the bond and mortgage in the amount of $1,800 from defendant Rodenberger, as mortgagor, to the bank, as mortgagee. The deed was delivered and the transaction closed in the office of plaintiff's attorney at Owego, New York, on August 11, 1950, as above stated.

On that day the attorney for defendant Rodenberger called the bank at Newark Valley by phone and advised it that the title to the premises was good, and that the deed to Mrs. Rodenberger had been recorded by him, together with the $1,800 mortgage from her to the bank. The bank thereupon credited an account which defendant Rodenberger had with it, with the sum of $1,800. This amount she shortly thereafter withdrew.

The evidence is sufficient to sustain the defendant bank's position that it advanced the money on its mortgage in good faith, upon the strength of the record title and without notice that the deed was obtained by the fraud of the mortgagor. There is no proof in this connection that the defendant Rodenberger's attorney was acting as attorney or agent for the bank. He merely transmitted to the bank the information above referred to, and received his compensation for services from the defendant Rodenberger, and not the bank.

The giving of the check in question was an implied representation that there were funds in the bank to meet it when presented, and constituted a fraud upon the plaintiff. (*Sieling* v. *Clark*, 18 Misc. 464; *Fruchtbaun* v. *Schinasi*, 147 N. Y. S. 401; 3 Daniel on Negotiable Instruments, §§ 1597, 1629.)

However, since the fraud which was practiced upon plaintiff constituted statutory larceny by false representations, rather than common-law larceny (*People* v. *Noblett*, 244 N. Y. 355, 361), title to the property passed to the defendant Rodenberger, which title was voidable and not void. (*Marden* v. *Dorthy*, 160 N. Y. 39, 50; *Phelps* v. *McQuade*, 158 App. Div. 528, 530; *Amols* v. *Bernstein*, 214 App. Div. 469, 472; *Industrial Bank of Commerce* v. *Packard Yonkers Corp.*, 101 N. Y. S. 2d 189, 191.)

Therefore, title to the premises having passed to the defendant Rodenberger, the mortgage which she in turn gave to the defendant bank constituted a valid first lien upon the property, even as against the defrauded grantor. In *Simpson* v. *Del Hoyo* (94 N. Y. 189) the court said, at page 194: " It is a familiar rule of law that a fraudulent purchaser of real or personal property obtains legal title to the property purchased, and that he may

convey a good title to any *bona fide* purchaser from him for value. He may not only convey the property, but he may deal with it as owner, and may mortgage it; and whoever purchases the property or takes a mortgage thereon from him or under him, in good faith, for value * * * will be protected against the claims of the defrauded vendor.''

That is precisely the position of the bank in the present case, and its mortgage under the circumstances constitutes a valid lien upon the premises in question, which is superior to the plaintiff's rights.

The defendants Niemi and Marshall, who are attachment creditors, occupy a different position. On August 15, 1950, Niemi accepted a check from the defendant Rodenberger in the amount of $832.44, as payment for certain poultry. On August 17, 1950, Marshall accepted a check from her in the amount of $3,600 in exchange for his check in a like amount. The Marshall check was to be used by the defendant Rodenberger in the purchase of poultry from a third party. Both checks so received by these defendants were fraudulent.

Niemi reduced his claim to judgment and filed a warrant of attachment against the premises, which are the subject of this action, on September 2, 1950. Marshall did likewise and filed his attachment, after the plaintiff had filed his *lis pendens* in this action on September 5, 1950.

The defendants Niemi and Marshall claim that they parted with their property in reliance upon statements made to them by the defendant Rodenberger that she had just purchased the premises in question. It is their contention that such representation, coupled with the fact that the record title was actually in her name at that time, placed them in the position of creditors who had parted with their property upon the strength of such record title, and that, therefore, their rights are superior to those of the defrauded grantor.

In the first place, their proof fails to convince the court that they parted with their property in reliance upon such representation, because they both had previous business dealings with the defendant Rodenberger and her husband, wherein they had accepted their personal checks in substantial amounts upon the sale of poultry.

Secondly, it is conceded by both Niemi and Marshall that they made no examination of the records in the Tioga County Clerk's office, nor did they have anyone do so on their behalf, to verify the alleged statements of the defendant Rodenberger that she

had recently purchased certain real property. It is further conceded that the plaintiff made no representation of any nature to Niemi or Marshall regarding the title to the premises.

Therefore, the proof falls short of showing that these attachment creditors are in the position of persons who parted with moneys in good faith and in reliance upon the record title. Reliance, if any, was upon defendant Rodenberger's oral statements concerning her financial worth, and not upon record title.

The language of the court in the case of *Spring* v. *Short* (90 N. Y. 538, 543) is applicable to the situation here—" besides they are not in the position of judgment creditors who have advanced money without notice on the faith of a good title; they are merely ordinary creditors who have contracted a debt with another, *supposing that he was the owner of property unincumbered and had ability to pay.*" (Italics supplied.)

This, at best, is the position of the defendants Niemi and Marshall in the present case.

The case of *Hulett* v. *Whipple* (58 Barb. 224), cited by the defendant Niemi, is not an authority to the contrary. In that case, a vendor of real estate took back certain notes for a portion of the unpaid purchase money. This gave him as against the vendee, an equitable lien for the unpaid purchase money. He waited two years and nine months before attempting to assert this lien or make it known to others. In the meantime, certain judgment creditors made advances to the record owner of the premises in good faith, and upon the strength of his record title. The court there held (p. 232): " it may be laid down as a sound rule of equity, that a judgment creditor who advances his money upon the faith of unincumbered title upon the record, without notice, is entitled to the lien acquired thereby, in preference to the secret, unrecorded lien of the vendor for a part of the purchase money; that such judgment creditor is to be regarded as a *quasi* purchaser for a valuable consideration, without notice.''

The court there also sustained the validity of the judgment creditors' lien on the ground (p. 232) of a " legal waiver by the plaintiff to his right to his equitable lien, as against bona fide judgment creditors who have advanced their money upon the faith of an unincumbered record title, subsequent to the title of plaintiff.''

It will be readily apparent that the facts in the present case are far different from those in the case just quoted.

The plaintiff in the case at bar was not guilty of laches in asserting the fraud and commencing his action to rescind. The deal was closed on August 11, 1950. A few days elapsed before he discovered that the check had not been honored. His attorney forthwith called the attorney for the defendant Rodenberger, and was assured by him that he would contact his client and straighten the matter out.

After two or three weeks had passed, it was evident that this could not be done, and that plaintiff had actually been defrauded. He then commenced this action and filed a *lis pendens* in the County Clerk's office on September 5, 1950.

The fact that the defendant Niemi filed his warrant of attachment against the premises on September 2, 1950, and prior to the date plaintiff filed his *lis pendens* in the present action, and that the defendant Marshall filed his attachment thereafter, is of no consequence. Both of these defendants are in the position of general creditors of the defendant Rodenberger, and neither can be considered in the category of either quasi or actual bona fide incumbrancers of the premises for value, with rights superior to those of the defrauded plaintiff.

In *Wise* v. *Grant* (140 N. Y. 593, 596) the court there stated, in language which again is pertinent to the situation here, as follows: "Neither the sheriff nor the creditors in the attachment were, by reason of the seizure, in the situation of purchasers for value, and *it is only persons in that situation, purchasing in good faith, who are protected against the title of the defrauded vendor* who reasonably, on coming to a knowledge of the fraud, elects to rescind the contract. The bringing of the replevin was an act of rescission". (Italics supplied.)

Therefore, we are of the opinion that the plaintiff's rights on rescission are paramount to any alleged rights of the attachment creditors.

The motion to dismiss this action upon the ground that the plaintiff is not the real party in interest, is without substance. The fraud was practiced upon plaintiff and his attorney, and this action in equity is to restore all defrauded parties to their original position, insofar as that is possible.

The motions of the defendants to dismiss plaintiff's complaint, upon which decision was reserved at the trial, are denied.

It is adjudicated that the deed in question was obtained from the plaintiff by the fraud of the defendant Rodenberger, and that the same be therefore set aside and cancelled of record.

It is also adjudicated that the mortgage of the defendant

bank is a valid lien upon said premises, superior to any rights of the plaintiff.

It is further adjudicated, that the warrants of the attachment creditors do not constitute valid liens upon said premises superior to plaintiff's rights, and the same are therefore ordered cancelled of record, insofar as they may now constitute a lien against these premises.

Judgment may be entered in accordance herewith.