In re SAGMAN.

No. 88651.

United States District Court
S. D. New York.

Jan. 6, 1953.

Sim C. Binder, New York City, for petitioner, N. Torczyner & Son, Inc.

Hugo J. Frankl, New York City, for trustee.

## WEINFELD, District Judge.

Respondent, N. Torczyner & Son, Inc., seeks to review an order of the Referee in Bankruptcy directing it to turn over various rings and other specified jewelry to the trustee of the estate of the bankrupt, a partnership consisting of Herman Sagman and his sons, William and Milton. The respondent was, and still is, engaged in selling diamonds. The bankrupt was also in the jewelry business.

The turnover proceeding was instituted upon the trustee's petition, which alleged that the respondent, within four months before the filing of an involuntary petition against the bankrupt, had obtained from it the rings and other jewelry and that their continued retention by respondent and refusal to deliver it to the Estate constituted a preference and a fraud, as defined by the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

The respondent appeared specially, challenging the jurisdiction of the Referee and the Court, asserting that it held the property under a bona fide and substantial adverse claim, and that the jewelry was not in the actual or constructive possession of the Court at the time of the filing of the involuntary petition. It also filed an answer, which admitted the retention of the rings, but denied the material allegations of the petition as to its knowledge of insolvency and preference, and set up as an affirmative defense that it had obtained the chattels from the bankrupt as collateral for the return of various diamonds previously delivered to the bankrupt at various times on memorandum.[1]

After hearings, the Referee overruled the plea of lack of jurisdiction and entered an order directing the turnover of the property to the trustee. It is this order which respondent now seeks to reverse, assigning various errors.

The facts as found by the Referee substantially are as follows:

On May 9, 1952, an involuntary petition was filed against the bankrupt. It had been indebted to the respondent on open account for $6,000; and, in addition, had received from the respondent diamonds on memorandum of the value of $9,596.08, which the bankrupt neither returned nor paid for. These transactions had taken place over many months prior to April 4, 1952, when the incident occurred which gave rise to the turnover proceeding.

As early as November 1951, the bankrupt encountered financial difficulties. In February 1952, respondent was advised by the attorney for the bankrupt of its insolvency. Thereafter, over an extended period, re-

[1]. In appearing specially and also answering, respondent relied upon Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97.

spondent's and bankrupt's representatives held numerous conferences, some of which were attended by their attorneys, aimed at solving the bankrupt's financial difficulties. One proposal under consideration was an advance of funds by the respondent to the bankrupt to enable it to effect a compromise arrangement with the remaining creditors. Under this plan the respondent was to participate in the bankrupt's business. During the progress of these negotiations, the bankrupt became entitled to the possession of certain jewelry, referred to as the "Boston parcel," consisting of various rings, the subject matter of the instant proceeding. This jewelry was unrelated to, and did not constitute any part of, the merchandise previously delivered by respondent to the bankrupt on memorandum.

On April 4, 1952, respondent requested Milton Sagman of the bankrupt firm to produce the "Boston parcel" at its place of business for the alleged purpose of examining the same in furtherance of the proposed plan by which respondent was to finance the contemplated settlement with other creditors. The property, which was in regular jeweler trays, was examined and evaluated and then forthwith impounded in a safe by an officer of the respondent, who advised Milton Sagman that it would be held until the money due and owing to respondent from the bankrupt was paid. It was retained against Milton Sagman's protest, who finally demanded, and received, a receipt prepared by respondent's attorney, which omits any reference to terms or conditions of the retention of the property. Milton Sagman returned within an hour with his father and again demanded the return of the goods, which was refused. Repeated demands for its return by the bankrupt and creditors' representatives prior, and by the trustee subsequent, to the filing of the petition in bankruptcy were of no avail and respondent still retains the property, the value of which is stated to be $8,062.52.

The foregoing summarizes the facts as found by the Referee. His conclusions of law were to the effect that at no time had bankrupt parted with legal possession of the "Boston parcel"; that the respondent took the property tortiously and without the consent of the bankrupt; and, finally, that the respondent's asserted adverse claim to the property is not substantial, but is a mere pretense without legal justification and was advanced in bad faith.

The Referee also rejected for failure of proof the respondent's affirmative defense that the property had been obtained by it from the bankrupt and held as collateral for the return of the merchandise previously delivered on memorandum.

The respondent assigns various errors in seeking a reversal of the turnover order. Thus, findings of fact 4, 5, 6 and 7, which go to the issue of insolvency and respondent's knowledge thereof on and prior to April 4, 1952, are attacked on the ground that there is no proof in the record to sustain them. This contention dissolves upon a reading of the testimony and can hardly have been advanced with hope of success. The evidence establishes that knowledge of the insolvency of the bankrupt was conveyed directly to officers of the respondent by bankrupt's attorney and by the bankrupt itself and that respondent's representatives participated in a series of conferences to effect compromise arrangements of bankrupt's affairs where a basic consideration was the fact of insolvency. These and other facts and circumstances compel the conclusion that the bankrupt was hopelessly insolvent. So, too, must the attack fail upon the other findings which relate to the events of April 4, 1952, the value of the jewelry and demand for their return. All the findings are abundantly supported by the evidence. After reading the testimony and the record, I am persuaded that any contrary findings would have been "clearly erroneous."

Respondent next urges that all the conclusions of law were decided erroneously by the Referee, but the principal challenge is directed towards the Referee's conclusion that the Bankruptcy Court had summary jurisdiction to determine the issues raised by the trustee's petition and respondent's answer and to issue the turnover order. It contends that as an adverse

818

claimant it asserted a substantial, and not a colorable, claim, even though such claim may possibly be fraudulent.

A Court of Bankruptcy has summary jurisdiction to determine and pass upon claims to property which is in the actual or constructive possession of the Court. Constructive possession exists "where the property is held by one who makes a claim, but the claim is colorable only."[2] The Court is not ousted of jurisdiction by the mere assertion of an adverse claim; it still retains the power to pass upon and determine the question of possession upon which depends its jurisdiction to make a summary order with respect to the disputed property.[3] Thus, the question is whether the adverse claim here asserted by respondent to the jewelry obtained from the bankrupt is substantial or merely colorable. If the latter, the Bankruptcy Court had constructive possession and so had jurisdiction and the power to make the summary order; if the former, the jurisdictional attack should have been sustained and the trustee relegated to a plenary suit.[4]

It is undisputed that the bankrupt submitted the "Boston parcel" for examination and inspection to the respondent's officer, who thereupon retained and withheld it. There was no voluntary surrender of the merchandise by the bankrupt. Respondent obtained physical possession by gaining the confidence of the bankrupt, posing as its benefactor, and misrepresenting the purpose for which it desired to examine the goods. Significantly, the answer admits that respondent "induced the Bankrupt to deliver said chattels to [it] on the representation that the Respondent desired and required to inspect and examine same." The record abundantly establishes that this was mere pretense to enable respondent to seize the jewelry.

To support its plea that its claim is substantial, the respondent contends that the bankrupt's failure to return the memorandum goods upon demand constitutes "a larceny and a crime, and therefore [it] had a perfect and legal right to receive and hold the goods * * * from the Bankrupt as collateral and as a counterclaim to any demand that may be made for such goods by the firm of H. Sagman."

The fact that the bankrupt may have offended criminal statutes in failing to pay for or return the goods sold on memorandum did not authorize the respondent by artifice and device to obtain and retain without bankrupt's consent property of the bankrupt entirely unrelated to the transaction. There was no color or right of authority to the withholding and retention by respondent of the "Boston parcel." It became possessed of it by tortious conduct. Had it, instead of inducing delivery of the jewelry for inspection at its own place of business, gone to the bankrupt's premises and there asked to inspect and examine the tray containing the jewelry and while so doing, seize its contents, to be held as collateral for the amounts due from the bankrupt, its position would be no better.[5]

The respondent's tortious conduct did not give it legal possession. Legal possession remained in the bankrupt and so the Bankruptcy Court had constructive possession at the time of the filing of the petition and jurisdiction to enter the turnover order. What was said in May v. Henderson, 268 U.S. 111, 119, 45 S.Ct. 456,

2. Taubel-Scott-Kitzmiller Company, Inc. v. Fox, 264 U.S. 426, 433, 44 S.Ct. 396, 399, 68 L.Ed. 770. See also May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870; Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897; Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433.

3. Cline v. Kaplan, 323 U.S. 97, 99, 65 S. Ct. 155, 89 L.Ed. 97; Taubel-Scott-Kitzmiller Company, Inc. v. Fox, footnote 2, supra, 264 U.S. at page 433, 44 S.Ct. 396.

4. Cline v. Kaplan, footnote 3, supra.

5. Cf. Amols v. Bernstein, 214 App.Div. 469, 212 N.Y.S. 518, at page 521: "In principle, Mitchell obtained no more right to the possession of the ring in suit through the fraudulent device to which he resorted than he would have obtained if he had surreptitiously removed the ring from plaintiff's showcase when the latter was not looking."

460, 69 L.Ed. 870, seems particularly descriptive of respondent's attempt to make itself whole at the expense of other creditors of the Estate: "At most it was a clumsy, ineffectual, and fraudulent effort to divert the funds of the bankrupt to the payment of a favored creditor."

The further contention is made that respondent's retention of the "Boston parcel" does not involve a preference under Section 60 of the Bankruptcy Act and, therefore, may not be avoided by the trustee. The claim is that the jewelry was withheld as collateral not for the $6,000 due it on the open account, but for the memorandum goods, as to which it states the debtor and creditor status does not exist. Hence, it argues that since it is not a creditor as to these goods, no antecedent debt is involved and no preference passed to it on account of such a debt. This plea, based upon the affirmative defense, was rejected by the Referee as unsupported by the evidence. The receipt prepared by the respondent, after consultation with its attorney, discloses no such arrangement. But even if respondent's factual contention were assumed, arguendo, it would not change the result. In effect, respondent is claiming a lien on rings and like jewelry to secure the return of the various diamonds delivered on memorandum. It would be an oddity in the administration of insolvent estates for a Court of Bankruptcy to have summary jurisdiction [6] to declare as null and void every lien against the property of an insolvent person obtained by legal and judicial process within four months of the filing of the petition and yet to be without such summary power where one claimed a lien, not by legal and judicial process, but by grab-law.

The remaining conclusions of law substantially revolve about the jurisdictional issue and are fully warranted.

The petition for review is dismissed and the Referee's order is sustained.

Settle order on notice.

6. See Section 67, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. a(4).