**In the Matter of SPUR FUEL OIL SALES CORP., Alleged Bankrupt.**
**No. 62–B–148.**

United States District Court
E. D. New York.
May 3, 1962.

Jacob Frummer, Brooklyn, N. Y., for receiver.

Hilton M. Soba, Mineola, L. I., N. Y., for petitioner.

Schrank & Harrington, Jamaica, N. Y., for Lawrence J. Bennett, Inc.

Leo Blatt, Jamaica, N. Y., for Robt. T. Williamson, Assignee.

MISHLER, District Judge.

### FACTS

Upon the petition of Robert T. Williamson, Assignee for the benefit of creditors of Spur Fuel Oil Sales Corp., Assignor (alleged bankrupt), the County Court of Nassau County, by order dated February 8, 1962, authorized a sale of the assets of the Assignor by giving 5 days notice of sale to creditors and publishing the notice at least three days prior to the date of sale. The sale was fixed for February 14th at 11:00 A.M. at 150 Roger Avenue, Inwood, the place of business of the Assignor.

Lawrence J. Bennett, Inc. was at the time of execution of said order and prior thereto the sole stockholder of the Assignor; it also owned two chattel mortgages encumbering motor vehicles owned by the Assignor. On the date fixed for the Assignee's sale of assets, i. e., February 8th, a chattel mortgagee's sale was also scheduled at Assignor's place of business at 10:30 A.M.

On February 14th, the date fixed for both sales at about 10:10 A.M., an order was signed by a judge of the County Court of Nassau County, directing the Assignee and Lawrence J. Bennett, Inc. to show cause why the assignment should not be set aside and staying " * * * all proceedings and sales herein and under the chattel mortgage * * together with any sale by the assignee herein." The order further directed service of the order to show cause upon the Assignee or his attorney personally, the auctioneer and upon Lawrence J. Bennett, Inc. "at their offices in accordance with Rule 20 of the Rules of Civil Practice on or before the 14th day of February 1962, shall be sufficient." [1]

Hilton Scoba, the attorney for one Arthur Ross, who procured the order to show cause and presently is representing petitioning creditors in this proceeding, called the Assignor's place of business and spoke on the telephone to the Assignee's attorney, the attorney for Lawrence J. Bennett, Inc. and Gabe Wishbow, the auctioneer. Mr. Scoba testified he called about 10:20 A.M. on February 14th. This testimony is supported by one Sy Blumberg who was present at the Assignor's premises. Other testimony was offered that all three persons spoke to Mr. Scoba when the chattel mortgage sale had started but before it was completed; these persons were advised by Mr. Scoba that an order to show cause was signed by a judge of the County Court staying both sales. Actual service of the order was made upon Lawrence J. Bennett, Inc. at 10:40 A.M. of that day at the corporation's offices in Garden City, and upon the auctioneer at about 11:21 A.M.

The auctioneer announced before the bidding had been completed that the sale was "an iffy sale". If the sale were stopped the purchaser would receive his money back and if not the merchandise purchased would be retained by the successful bidder.[2]

---

1. Rule 20 of the Rules of Civil Practice provides for methods of service of papers. It is captioned "Mode of service of papers generally". It is not clear from the order whether the service was to be made upon the attorney either personally or in accordance with Rule 20. The direction of personal service does not seem to apply to the auctioneer or Lawrence J. Bennett, Inc.

2. Mr. Blumberg testified:
"Q. Did you hear the auctioneer make any statement at that time when he started the sale?
"A. Yes.

"Q. Tell the Court what he announced.
"A. He got on, the auctioneer got on the platform and said: We are going to call this an iffy sale. I thought it was a funny word; if the sale is stopped you will get back your deposit; and if it is not stopped, whatever you purchase will be yours."
Mr. Blatt, attorney for the Assignee testified:
"Q. Were you present at the time when an announcement was made by Mr. Wishbowes as was testified to by the witness that appeared here this morning?
"A. Yes, he was substantially right; that is what he said."

Lawrence J. Bennett, Inc. was the successful bidder at both sales. Bills of sale were executed in favor of Frederick Schrank, nominee of Lawrence J. Bennett, Inc. and to Lawrence J. Bennett, Inc. immediately after the sale and before service of the order staying the sales. Inwood Oil Corp. was organized by Lawrence J. Bennett, Inc. to operate the fuel oil business formerly conducted by the Assignor and is presently in possession of said business together with all the physical assets purchased at both sales and which were used in the business of the Assignor.

## FILING OF INVOLUNTARY PETITION AND PROCEEDING

On February 19, 1962, an involuntary petition in bankruptcy was filed and John M. Conroy was appointed Receiver. The instant application is by the Receiver to turn, over to him all the assets of the Assignor (alleged bankrupt) now in the possession of the Assignee, Inwood Oil Corp. and Lawrence J. Bennett, Inc. and for an accounting.

In addition to generally denying the allegations of the petition, respondent Inwood Oil Corp., Lawrence J. Bennett, Inc. and the Assignee put in issue the jurisdiction of this Court to summarily determine the validity of the two sales conducted on February 14, 1962, prior to the filing of the petition.

The Court held a hearing on the issues raised by respondents.

## SUMMARY JURISDICTION OF THE BANKRUPTCY COURT

Respondents dispute the jurisdiction of this Court to summarily determine the question of title of Inwood Oil Corp. to the chattels, fixtures, equipment and good will (including customers' lists). The contention of the respondents is that the claim of the said Inwood Oil Corp. is a substantial adverse claim which must in the absence of the consent of such adverse claimant to the summary jurisdiction of this Court, be determined in a plenary action. The right of the said corporation rests upon the title acquired by Lawrence J. Bennett, Inc. at the sales.

Section 70, sub. a(8) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(8) provides:

" * * * property held by an assignee for the benefit of creditors appointed under an assignment which constituted an act of bankruptcy, which property shall, for the purposes of this title, be deemed to be held by the assignee as the agent of the bankrupt and shall be subject to the summary jurisdiction of the court."

The summary jurisdiction of this Court has been confined to matters in rem and by its very nature is based upon the actual or constructive possession of the res in the debtor or his agent at the time of the filing of the petition in bankruptcy. In re Livingston, D.C.1950, 93 F.Supp. 173. Where possession of property is in third persons and such third persons have a substantial claim, the Court does not have jurisdiction over the subject matter unless such adverse claimant submits to the summary jurisdiction of the Court or consents thereto. The extent of the authority of the summary jurisdiction of a bankruptcy court is stated in Harrison v. Chamberlin, 1926, 271 U.S. 191, 193–194, 46 S.Ct. 467, 468, 70 L.Ed. 897, as follows:

"It is well settled that a court of bankruptcy is without jurisdiction to adjudicate in a summary proceeding a controversy in reference to property held adversely to the bankrupt estate, without the consent of the adverse claimant; but resort must be had by the trustee to a plenary suit. * * * However, the court is not ousted of its jurisdiction by the mere assertion of an adverse claim; but, having the power in the first instance to determine whether it has jurisdiction to proceed, the court may enter upon a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable. And if found to be merely colorable the court may then proceed to adjudicate the merits summarily; but if found to be real and substantial

it must decline to determine the merits and dismiss the summary proceeding."

■ Summary jurisdiction of this Court must rest upon the actual or constructive possession of the chattels, fixtures and customers' accounts in the alleged bankrupt on February 19, 1962, the date of the filing of the petition in this proceeding. Rockmore v. New Jersey Fidelity & Plate Glass Co., 2d Cir., 65 F.2d 341. As of that date, title of the Assignee reverted to the alleged bankrupt. In City of New York v. United States, 1960, 2d Cir., 283 F.2d 829, the Court of Appeals in discussing the legislative history of Section 70, sub. a(8) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(8) wrote that " * * * it was meant to be declaratory of existing law and merely to facilitate the summary jurisdiction of the bankruptcy court." The court said at page 833:

"The legislative history of the present § 70, sub. a(8) indicates that it was meant to be declaratory of existing law and merely to facilitate the summary jurisdiction of the bankruptcy court under § 2, sub. a (21), 11 U.S.C.A. § 11, sub. a(21) to require assignees to deliver property in their possession to the trustees in bankruptcy. See H.R.Rep. No.1409, 75th Cong., 1st Sess. 34 (1937); Shor v. McGregor, 5 Cir., 1939, 108 F.2d 421; 1 Collier, Bankruptcy para. 2, 78."

## SUBSTANTIAL ADVERSE CLAIM OR MERE COLORABLE TITLE

Respondents strongly urge that the delivery of the bills of sale prior to the service of the order to show cause of the County Court staying the sales, gives substance to the claim, and therefore the title acquired at the sales was not merely colorable. The court in Jackson v. Sports Company of Texas, Inc., 1960, 5th Cir., 278 F.2d 716 observed at p. 717:

"Much has been written on the subject [summary jurisdiction] by the courts and their attitudes have not always been characterized by consistency."

■ It would appear that the standard to determine the summary jurisdiction of the bankruptcy court is similar to that, in determining the right to summary judgment, generally employed in motion practice. The question is whether or not there is a real issue of fact. Title is merely colorable where the claim is a sham. When such title is received through a debtor directly or indirectly, it is actually held for the debtor and since the debtor has a right to possession it is said that the debtor has constructive possession. Cline v. Kaplan, 323 U.S. 97, 99, 65 S.Ct. 155, 89 L.Ed. 97; Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 433–Footnote 2, 44 S.Ct. 396, 68 L.Ed. 770; In re Sagman, D.C., 109 F.Supp. 815, 818. In re Quan Weing, 1939, 2 Cir., 104 F.2d 112, 113, the court said:

"The court does have possession * * * of property held by one who does claim it but whose claim is so insubstantial in fact or law or both that it is only colorable. May v. Henderson, 268 U.S. 111, 116, 45 S.Ct. 456, 69 L.Ed. 870."

■ Respondents rely upon the failure of personal service of the Order to Show Cause prior to the sales conducted by the auctioneer to substantiate the claim to the property purchased. The power to proceed was stayed upon the signing of the order; the direction for service was only to give notice to interested parties of the application made before the court. Knowledge of the suspension of the power to proceed with the sale was sufficient to defeat the purchaser's title. The refusal of the respondents to inquire into the existence of the order after such notice by telephone, the completion of the sale before service could be effected [It should here be noted that personal service of the order was served upon Lawrence J. Bennett, Inc. prior to the assignee's sale conducted at 11:00 a. m.] could not create a greater right in such a purchaser. Respondent Lawrence J. Bennett, Inc. acquired a paper that gave the appearance of the conveyance of title. The said respondent acquired no more for the pur-

chaser knew, or should have known, that the power to transfer was suspended.

The cases cited in respondents' briefs are inapposite. The factual situation in all the cases where summary jurisdiction was denied presented a substantial question of the good faith of the party in whom title was transferred. In In re Resnek, D.C., 167 F. 574, the question was whether the third party had reasonable cause to believe that he was obtaining a preference and further whether the bankrupt was insolvent at the time of the levy and sale. In Stark v. Baltimore Soda Fountain Manufacturing Co., Inc., 1950, 4th Cir., 185 F.2d 398, claimant was a third party " * * * in actual possession of the property prior to the bankruptcy * * * and that claimant was asserting title in good faith."

The Court of Appeals of this Circuit in In re Gutwillig, 92 F. 337, took the following view concerning transfers at page 339:

> "The purchaser under a voluntary conveyance must not only be a purchaser in good faith, but he must be one who has subtracted nothing essentially from the value of the debtor's assets. They are wholly inconsistent with an interpretation of the clause annulling voluntary conveyances which will permit such conveyances to stand when intended to defeat the operation of the bankrupt act. [§ 67 of the bankruptcy act, 30 Stat. 564 presently 11 U.S. C.A. § 107] [3] This clause must be

interpreted in a sense which harmonizes with the general intent of the section as gathered from the other clauses; and, thus read, it annuls any conveyance made to impair or defeat the remedy of creditors under the bankrupt act, unless made to a purchaser not in complicity with the insolvent, and for a 'present fair consideration.'"

The Court of Appeals in Sahn, as Trustee in Bankruptcy of Murray Packing Co., Inc. v. Pagano, 2d Cir., 302 F.2d 629, 632, quoted Oriel v. Russell, 278 U.S. 358, 363, 49 S.Ct. 173, 73 L.Ed. 419, stating "the Court in passing on the issue under * * * a turnover motion should * * require clear evidence of the justice of such an order before it is made". The test was there met, as it is here.

### DISPOSITION

The lack of good faith is palpable. The title conveyed by the auctioneer on February 14, 1962, to Frederick Schrank as nominee of Lawrence J. Bennett, Inc. at the assignee's sale, and to Lawrence J. Bennett, Inc. at the chattel mortgage sale was not bona fide and gave said purchaser merely colorable title. The Court finds that on the date of filing the petition in bankruptcy, the Assignee was in constructive possession of all the goods, chattels, good will customers' lists and all other items sold at the sales aforementioned. This Court has summary jurisdiction over the subject matter.

Petition is granted. Settle order on two days notice.

---

3. 11 U.S.C.A. § 107 reads in part as follows:

"(a) (4) The court shall have summary jurisdiction of any proceeding by the trustee or debtor, as the case may be, to hear and determine the rights of any parties under this subdivision. Due notice of any hearing in such proceeding shall be given to all parties in interest.

\*　　\*　　\*　　\*　　\*

"(d) (3) Every transfer made and every obligation incurred by a debtor who is or will thereby be rendered insolvent, within four months prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent, as to then existing and future creditors:

(a) if made or incurred in contemplation of the filing of a petition initiating a proceeding under this title by or against the debtor or in contemplation of liquidation of all or the greater portion of the debtor's property, with intent to use the consideration obtained for such transfer or obligation to enable any creditor of such debtor to obtain a greater percentage of his debt than some other creditor of the same class, and (b) if the transferee or obligee of such transfer or obligation, at the time of such transfer or obligation, knew or believed that the debtor intended to make such use of such consideration."